# McGee v. The State.

## Assault With Intent.

### (Decided May 7, 1912. 58 South. 1008.)

1. *Witnesses; Competency; Husband and Wife.*—A wife is a competent witness against a husband on trial for assault with intent to murder her.

2. *Assault and Battery; Intent.*—Generally, the intent to injure is an essential element of the offense of assault and battery; an assault being an attempt or offer with force or violence to do a corporal hurt to another, and a battery the touching of another in an angry, revengeful, rude or insulting manner.

3. *Same.*—One is answerable to a criminal prosecution for an assault and battery where he intentionally does an illegal act from which another suffers personal violence, or wantonly does an act which, but for the wantonness would be a legal act, under such conditions as will be dangerous to another and causing personal violence to another.

4. *Same; Wanton Negligence.*—Where a gun in the hands of a person is accidentally discharged, he doing nothing intentional to cause the discharge, and another is injured thereby, he is not guilty of an assault and battery. but when his wanton conduct caused the discharge of the gun and injury to another, he is guilty of an assault and battery; to constitute wanton negligence, however, there must be a design or intent to do wrong, or reckless indifference to the actual or probable consequence of the act done.

5. *Homicide; Instructions; Evidence.*—Where the cause was the prosecution of the husband for assault with intent to murder his wife, and the evidence for the state showed that he intentionally shot his wife, with a repeating shotgun intending to murder her, and the evidence for the defendant tended to show that the wife was accidentally shot while he was sitting down attempting to work the repeating shotgun, when it was discharged, some of the shots striking the wife, and that while he was pulling at the gun he gave it a jerk which brought it in line with his wife, a refusal to charge the jury that to convict the defendant, they must believe that the shooting was intentional, and that if the jury had a reasonable doubt that the shot was accidentally fired by the accused they must acquit him, was error.

6. *Criminal Law; Defense; Drunkenness.*—One who commits an assault and battery or an assault cannot show in defense thereof that he was voluntarily drunk at the time, and incapable of forming an intent.

APPEAL from Russell Circuit Court.

Heard before Hon. MIKE SOLLIE.

[McGee v. The State.]

William McGee was convicted of assault and battery upon his wife, and he appeals. Reversed and remanded.

GLENN & DE GRAFFENRIED, for appellant. The wife was not a competent witness against the husband.—*Robinson v. Robinson,* 44 Ala. 227. Having permitted her to be introduced, the court erred in permitting another witness to give testimony in direct conflict with that given by the wife.—*Winston v. Mosely,* 2 Stew. 137. The court erred in not permitting the witness to exhibit her injured limb to the jury.—*King v. The State,* 100 Ala. 85. Dr. Elrod did not qualify as an expert.—*A. G. S. v. Burgess,* 119 Ala. 555; *Torrey v. Burney,* 113 Ala. 496; *Prince v. The State,* 100 Ala. 144; 6 Allen 146. The court erred in refusing the charge requested.—*White v. The State,* 84 Ala. 421; *Walls v. The State,* 90 Ala. 618; *Carter v. The State,* 87 Ala. 113; *Lane v. The State,* 85 Ala. 11; *Tarver v. The State,* 43 Ala. 354; 22 Cyc. 1456.

R. C. BRICKELL, Attorney General, and W. L. MARTIN, Assistant Attorney General, for the State. The wife was a competent witness.—*Clark v. The State,* 117 Ala. 17; *Johnson v. The State,* 94 Ala. 53. Although the State may not impeach its own witnesses, it may show facts differing from those to which the first witness testified.—*Jones v. The State,* 115 Ala. 67. The court was not in error in not requiring the witness to submit to inspection by the jury, and in permitting the physician to examine her and testify concerning her injuries.— *McGuff v. The State,* 88 Ala. 147. Counsel discuss the charges, but without further citation of authority.

DE GRAFFENRIED, J.—The defendant was indicted for assaulting his wife with the intent to murder her.

1. So far as the evidence discloses, there were but three witnesses to the alleged offense, the defendant, the

wife, and another woman, Emma Frierson. The State introduced the wife as a witness, and, against the objection of the defendant, she was permitted to testify as a witness against her said husband. It has always been the rule that, in criminal prosecutions against a husband, for acts of personal violence against the wife, the wife is a competent witness against him. The reason for this rule is stated by the text-book writers to be one of necessity, for otherwise the crime might go unpunished.—1 Hale. P. C. 301; 1 East, P. C. c. 11, § 5, p. 445. The wife, in such a case, is not only a competent witness against her husband, but she can be *compelled* to testify, whether she desires to do so or not. The public has an interest in her testimony, for it is to the interest of the public that all crimes shall be punished.—*Johnson v. State,* 94 Ala. 53, 10 South. 427. There was, in early times, some doubt expressed as to whether one spouse was competent, in such cases, to testify to facts which could be testified to by other witnesses; but there seems to be, now, no doubt of the competency of a spouse to testify, in such cases, to facts which could be or are in fact, testified to by other witnesses.—3 Am. & Eng. Ency. Law (2d Ed.) 955; *People v. Northrup,* 50 Barb. (N. Y.) 147. There was nothing in the objection of the defendant to the action of the court in permitting the wife to testify as a witness in the case. She was competent, in this case, as a witness either for or against him.—*Clarke v. State,* 117 Ala. 1, 23 South. 671, 67 Am. St. Rep. 157.

2. In *Blackwell's case,* 9 Ala. 79, the Supreme Court, through Ormond, J., said, in defining an assault for which a criminal prosecution will lie: "An assault is defined by Blackstone to be an attempt or offer to beat another without beating him; and it seems entirely clear that, when there is no attempt to inflict personal violence on another, there can be no assault."

"An assault is an *attempt* or *offer,* with *force* and *violence,* to do a corporal hurt to another."—Bacon's Abridgment, Tit. Ass. & Bat., p. 371. "Every *battery* includes an *assault.*"—Bacon's Abridgment, supra.

"The least touching of another 'willfully' does not constitute a battery. The touching of another 'in anger' is a battery."—*Alston v. State,* 109 Ala. 51, 20 South. 81.

"Any injury whatsoever being done to the person of a man in an angry or revengeful or rude or insolent manner, as by spitting in the face, or any way touching him in anger, or violently jostling him out of the way, is a battery in the eyes of the law."—Bacon's Abridgment, supra; *Chapman v. State,* 78 Ala. 463, 56 Am. Rep. 42.

"The *intent* to harm is the essence of an assault."—3 Cyc. 1067.

In other words, except in the instances to which we hereafter refer, in all *criminal* prosecutions for an assault or an assault and battery, the law looks to the *intent* with which the act was done. Where there existed, at the time of an alleged battery, no intent to do personal injury, then there was no *crime* unless the act was done under circumstances hereinafter referred to." —*Tarver v. State,* 43 Ala. 354; *Lane v. State,* 85 Ala. 11, 4 South. 730; Wharton's Am. Crim. Law (4th and Rev. Ed.) § 1341.

In civil, as *distinguished* from *criminal,* actions, *an intent to injure* is not *essential* to the liability of the person committing the assault.—*Carlton v. Henry,* 129 Ala. 479, 39 South. 924.

In fact, we think that, at times, courts have fallen into error in applying, or in attempting to apply, the rules applicable only to civil actions for assaults and batteries or trespass to the person to the facts in criminal prosecutions. In a criminal prosecution for an assault and battery, except as hereinafter shown, the *intent to*

*injure* is one of the essential elements of the offense; in civil actions, the *intent*, while pertinent and relevant, is not essential.—*Carlton v. Henry,* 129 Ala., 29 South., supra.

. 3. One of the exceptions to the above rule is that, in a criminal prosecution for an assault and battery or an assault, the fact that the defendant was voluntarily drunk at the time and was, on that account, incapable of forming or entertaining an *intent to injure* is no defense to such prosecution. The reason for this rule is so well established and so well known that we will not discuss it.

4. The other exception is that a defendant is held answerable to a criminal prosecution for an assault and battery in cases where he intentionally does an illegal act from which another suffers personal violence, or wantonly does an act which but for the wantonness would be a legal act under such conditions as will be dangerous to another and causing personal violence to another. For these reasons, there are many instances in which, in a criminal prosecution for an assault and battery, a conviction has been sustained in which the defendant did not entertain feelings of animosity against the party injured, but in which he intentionally did an illegal or mischievous act from which another suffered personal injury. For the same reasons, there are also many instances in which, in such criminal prosecutions, a conviction has been sustained because the defendant wantonly did an act not per se illegal, but which he knew or should have known was likely to injure another in his person, and by reason of which wanton act another was actually injured in his person. For the above reasons, convictions for assaults or an assault and battery are upheld in prosecutions for rape, robbery, and the like, as also in such instances as where a person in

the lawful custody of an infant wantonly exposes such infant to the inclemency of the weather, whereby it suffers bodily injury or pain, or where a person wantonly throws a lighted fuse into a crowd, whereby someone is injured, or wantonly strikes a horse upon which another is riding, or wantonly intrudes upon the privacy of a female in her bedroom, or wantonly places poison in the food of another, thereby causing him physical hurt, or in some other wanton way physical suffering or injury, however slight, is caused to another. Thus far, as we understand the law, criminal prosecutions may go, but no further. There is not, so far as the writer of this opinion has been able to find, any case in which even an expression of our Supreme Court can be construed as in conflict with the above views, except the case of *Medley v. State,* 156 Ala. 78, 47 South. 218, in which the court says that the "defendant intentionally shot Lokey, or he intentionally discharged the rifle at a place where it was likely some person would be hit, or that he intentionally pointed the rifle at Lokey in violation of section 4342 of the Criminal Code, or that he was *grossly negligent* in the handling of the rifle, and its discharge was the *result of such negligent act.*" Read in connection with the original record, which we have before us, the Supreme Court evidently intended, in using the words italicized above by us, to say that the defendant wantonly did an act fraught with danger to another, and that, by reason of such wantonness, personal injury had resulted to another; in other words, that the defendant designedly did an act calculated to produce bodily harm to another; and that when he did so he was reckless of the consequences of such act.—McClain's Criminal Law, vol. 1, § 347.

5. The evidence in this case was in sharp conflict. The evidence for the state tended to show that the defendant

intentionally shot his wife with a repeating shotgun, intending at the time to murder her. The evidence for the defendant, on the other hand, tended to show that "the wife was accidentally shot by the defendant; that the defendant had a repeating shotgun, and while he was sitting down trying to work the gun it was discharged, and some of the shot struck the wife; that when the defendant sat down he did not have the barrel in line with his wife, but that, while he was pulling at his gun, the defendant gave it a jerk bringing it in line with the wife, whereby she was shot." This being the condition of the evidence, the defendant requested the court in writing to charge the jury that, to convict the defendant, "they must believe from the evidence beyond a reasonable doubt that the shooting was intentional on the part of the defendant, and, if the jury have a reasonable doubt arising out of all the evidence that the shot was accidentally fired by the defendant, then they must find the defendant not guilty." Of course, the defendant was not guilty of assault with intent to murder if the gun was accidentally discharged.—*Walls v. State.* 90 Ala. 618, 8 South. 680. The only question, then, is: "Was there evidence from which the jury were authorized to infer the defendant's guilt of assault and battery if the gun was accidentally discharged?" If the gun went off accidentally, then the defendant did nothing, *intentionally,* to cause it to fire at the time of his wife's injury. If he acted wantonly in the matter, then he acted intentionally in the matter. To constitute wanton negligence, there must be a design, purpose, or intent to do wrong, or reckless indifference or disregard of the natural or probable consequences of the act done.—*Bower's case,* 110 Ala. 331, 20 South. 345; *Burgess' case,* 114 Ala. 587, 22 South. 169; *Moorer's case,* 116 Ala. 645, 22 South. 900.

"It is essential to constitute wanton negligence that the act done or omitted should be done or omitted with a *knowledge* and present consciousness that injury will probably result."—*L. & N. R. Co. v. Brown,* 121 Ala. 221, 25 South. 609.

In the case of *Grant v. Moseley,* 29 Ala. 302, the facts were that the mistress of a slave, a girl of 17, sent her back into a steamer to get some articles which had been left on the boat. The girl went on board at the forward gangway and attempted to return the same way. She met on the gang-plank, on her return trip from the steamer, two of the boat hands going up the gang-plank with a handbarrow loaded with wood. The girl's clothing became entangled with the handbarrow, and she was thereby thrown into the water and was drowned. There was a verdict for the owner of the slave, upon the ground that the employees of the boat, in handling the handbarrow, were guilty, not of wanton negligence, but of simple negligence. In that case, in order that they might relieve themselves of liability on the ground of simple negligence, the owners of the boat asked the court to charge the jury that, "if the death of the slave was the result of accident and not of design, then the plaintiff should not recover." Commenting upon the refusal of the trial court to give that charge, the Supreme Court, through Stone, J., said: "Accident, in this connection, may be defined chance, casualty, 'an event that takes place *without design.*' As we understand the charge it asserts the proposition that *duties omitted* cannot constitute the negligence to which the law attaches accountability; that there must also be acts of commission. Diligence, when the law imposes it as a duty, implies that 'we shall do those things we ought to do, and leave undone those things we ought not to do.' It requires action as well as forbearance to act.

*Accident repels the imputation of faults committed, but not of duties omitted."* As there cannot be a legal conviction of a person charged with an assault and battery unless the defendant either intentionally inflicts a personal injury upon another or inflicts such injury while doing an unlawful act or while wantonly doing that which, but for the wantonness, would be legal, and as the word "accident" "repels the idea of faults committed," it seems to us that the charge which the defendant requested the court to give to the jury and which we have above quoted should have been given.

There were but two theories in this case. One was that the defendant intentionally shot his wife. The other theory was that the gun was accidentally discharged while the defendant was undertaking to adjust it. If Emma Frierson, a witness for the state, testified truthfully, the defendant was guilty of either an assault with the intent to murder his wife, or, at the least, an assault and battery upon her person. If the evidence of the defendant or of the defendant's wife was true, he was guilty of nothing.

The judgment of the court below is reversed, and the cause remanded.

Reversed and remanded.