Appellant-defendant was indicted in one count for an assault upon Captain William H. Duke, with the intent to murder him, and in another count for unlawfully threatening, harming, or causing injury to a law officer actively engaged in the performance of his duty.
In response to a motion to compel an election, the State struck the second count and the case proceeded through the trial to a verdict under Count I, the count charging an assault with intent to murder.
The jury found defendant guilty of an assault and fixed his punishment at a fine of five hundred dollars. The court imposed additional punishment of a six-month sentence to hard labor for Dallas County.
At the conclusion of the evidence for the State, the defendant moved to exclude the evidence. The motion as overruled. Defendant rested without presenting any testimony. He requested in writing the general affirmative charge in his favor, which the trial court refused.
The undisputed evidence shows that at about 2:00 A.M. on March 26, 1977, there were six, seven, eight, nine or ten pistol shots fired from an automobile at, into or in *Page 328 
the direction of the residence of Captain William H. Duke, a deputy sheriff with an assignment as Chief of Narcotics, of Dallas County. An officer living in the same neighborhood testified that he heard the shots and saw the automobile. He notified law enforcement personnel who came to the scene but did not at that time apprehend anyone or find any evidence of injury or damage to any person or property.
Captain Duke was at home the night of the shooting, but he was not aware of the shooting until well after sunrise, when his son, Mr. Paul Duke of the Police Department of Selma, came to the residence soon after he had marked off duty about 7:00 A.M. The son noticed a bullet hole in the glass of the front door. Soon thereafter, Deputy Sheriff Walker arrived at the residence. Upon inspection, it was revealed that two bullets had entered the house; one bullet went through the front door, through the living room and dining room, where no partition was between them, and went through the sliding glass of the back door. The bullet itself was not recovered. The other bullet went through a pane of a front window, through the wall between the living room and kitchen, and into a cabinet, in which it was located and from which it was removed.
At the house at the time it was shot into, were Captain Duke and Mrs. Duke and their daughter-in-law, Mrs. Paul Duke, and the six-week-old child of Mr. and Mrs. Paul Duke. Officer Paul Duke was not at home but was on duty at the Police Department. Captain and Mrs. Duke were sleeping in a rear bedroom. Mrs. Paul Duke and her child were in a front bedroom. The third bedroom, the one nearest the front door, was unoccupied. None of the occupants heard the shots. They were all unaware of what occurred until Mr. Paul Duke returned the next morning from his duties at the police station.
The evidence connecting defendant with the criminal conduct involved consisted exclusively of some incriminating admission by him and the testimony of Ray Parnell.
The statement of defendant, which was reduced to writing and signed by defendant, was as follows:
 "On March 26 me and Racy Parnell at approximately 2:00 A.M. went by Billy Duke's house. Racy Parnell shot into his house five or six times with a .22 pistol. I drove the car, but I did not know that Racy Parnell was going to shoot into the house. I did not know that Racy had a pistol on him. This is a true statement to the best of my knowledge."
The quoted statement was signed by Douglas L. Hollingsworth and witnessed by W.H. Duke. Below the statement just quoted was the following:
 "A few days later I got scared about having a pistol so I went to the new bypass bridge and threw the .22 pistol into the Alabama River."
The additional statement was also signed by defendant and witnessed by W.H. Duke.
Ray Parnell testified that he had known defendant about seven years, that on March 26, 1977, they were "room mates or sharing a place," that on the early morning of March 26, they were traveling in defendant's Volkswagen, having left the place where they lived between 8:00 and 11:00 P.M. They were "smoking pot and drinking." He knew where Captain Duke lived. There was a gun, a pistol, in the glove compartment of the automobile, which "Doug took care of." They were "kind of looking for a party or something like that," during their travel all that evening. When they arrived in the neighborhood of where Captain Duke lived, Parnell took the gun out of the glove compartment. He was asked what he said about that time. His testimony continued as follows:
 "A Something about shooting either his car up or his house. I'm not sure which one. Mr. Duke's house.
 "Q At that time something to the effect of shooting either the car and the house of Mr. Duke?
"A No. No. The car or the house.
"Q The car or the house?
"A Yes, sir." *Page 329 
Upon being interrogated as to any response by defendant, the witness answered, "He said maybe `yeah.'" Testimony of the witness continued as follows:
 "Q All right, sir. I'll ask you one more time. You said he said maybe, yeah; is that correct?
"A Yes.
 "Q Do you recall anything else that was said on that occasion?
"A No, sir.
"Q All right, sir. Then what happened?
 "A Then we were getting close to Mr. Duke's house and it happened. That's when we committed the crime.
 "Q Okay. I understand that. Now, what did take place though? You said you were getting closer to Duke's house as those words were exchanged. Then what happened?
 "A Well, a gun was already out, and we slowed down when we got to Mr. Duke's house to make this turn here; and I rolled down the window and I emptied the gun.
"Q And how many times did you shoot?
"A Nine.
"Q Then what happened?
 "A Then we took a right at the corner and went on and then took another right, the next right.
"Q All right, sir. Then where did you go?
"A I think we went straight back —"
According to the undisputed evidence, two or three nights after the alleged crime in this case, Parnell again shot into the house of Captain Duke. He was apprehended, charged with assault with intent to murder Captain Duke on the first occasion and with assault with intent to murder Captain Duke on the second occasion, pleaded guilty to the charges and was given a sentence of five years in each case, with the sentences to run concurrently.
During the cross-examination of Ray Parnell and while defendant's attorney was interrogating him on the question of defendant's response to statements by Parnell as to shooting "up" Captain Duke's automobile or into his house, some reference was made to other statements made by the witness. The trial court ruled that defendant had opened the door for the admission, over defendant's objection, of a recorded statement made by the witness to counsel for the State and Deputy Sheriff Walker, a part of which was as follows:
"MR. GREEN: When was this car thing discussed?
"MR. PARNELL: Just right before we went by his house.
"MR. GREEN: Y'all were a block or two away or —
"MR. PARNELL: Yes.
"MR. WALKER: At the time you got the gun out?
"MR. PARNELL: That was the original idea.
"MR. WALKER: At the time you got the gun out?
"MR. PARNELL: Right.
"MR. WALKER: That's when that conversation began?
 "MR. GREEN: I understand. So, what you are saying — you were saying something about y'all were going to shoot up his car, I got the gun let's go shoot up his car?
"MR. PARNELL: Yes, sir.
 "MR. GREEN: Y'all were saying something about shooting up his car?
"MR. PARNELL: Yes, sir.
 "MR. GREEN: Do you remember that there was some agreement or some communication by him that that was all right or that was the thing to do or something along those lines?
 "MR. PARNELL: Yes, sir. There was, but like I said again I don't know if he thought I was kidding —
 "MR. GREEN: Just going along with you, whether he was agreeing with you don't —
"MR. PARNELL: Yes, sir.
 "MR. GREEN: But you do recall some statement on his part of yeah man that's good or that's cool or something like that? Or am I wrong, what do you recall? *Page 330 
 "MR. PARNELL: I don't recall — definitely I don't recall. But I feel sure that he did make a reply of some sort of agreement whether kidding or sincere.
"MR. WALKER: From that point on, then, what happened?
 "MR. GREEN: And — wait — this was about the car not about the house?
"MR. PARNELL: Okay. Yeah.
"MR. GREEN: That's what you're talking about?
"MR. PARNELL: Yes.
"MR. GREEN: And then what happened?
 "MR. PARNELL: And then I think we must have been just a block or half a block from his house and one of us got the idea probably me. I'm sure, because I had the gun, to just go ahead and shoot up his house.
"MR. GREEN: Was anything said about that?
 "MR. PARNELL: Sure — I'm sure there was something said. I'm sure that I said because, you know, it was my idea.
"MR. GREEN: Do you recall any statements from him?
 "MR. PARNELL: Only again in the same route he said, I'm not sure what he said, sure, cool, or —
 "MR. WALKER: Was there any conversation after you shot up the house as to why you didn't shoot the car; you changed your mind to shoot the house between the two of you? Did he make any statement as to why you chose to shoot the house rather than the car? Make any comment?
 "MR. PARNELL: I don't think — I don't think he said anything. I think there was something said but I'm not sure if it was him or me but I think there was something said along those lines. And other than that there was mostly silence right after it was done from the both of us."
Also admitted in evidence, over the objection of defendant, was an undated written statement signed by Parnell and witnessed by Captain Duke, as follows:
 "On March 26th at approx. 2 o'clock A M me and Doug Hollingworth was riding around in Doug Blue Volwagun when we decided to go by Billy Duke House and shoot in to it. Doug Hollingworth drove the car and I shot into Billy Duke house 5 or 6 times, also on the morning of the 28th I went back to Billy Duke house shooting 5 or 6 more times, I was in Rusty [surname not conclusively legible] Volwagon car this time. The gun I used was a 22 pistol belong to Doug Hollingworth.
 "This is a true statement to the best of my knowledge."
Captain Duke testified that prior to the date of the alleged crime he had known defendant and Parnell, had talked with both of them, and "had occasion to observe" them prior to the alleged crime.
A large number of rulings of the trial court are called in question by appellant as reasons for a reversal. We consider first an unquestionably serious question as to the sufficiency of the evidence to support a verdict finding defendant guilty of an assault.
 "An assault is any attempt or offer, with force or violence, to do a corporal hurt to another, whether from malice or wantonness, with such circumstances as denote, at the time, an intention to do it, coupled with a present ability to carry such intention into effect." Tarver v. State, 43 Ala. 354 (1869)
This statement in Tarver has been consistently quoted, almost, if not entirely, word-for-word, by the courts of Alabama for more than a hundred years. Burton v. State, 8 Ala. App. 295,62 So. 394 (1913); Taylor v. State, 27 Ala. App. 538, 175 So. 698
(1937); Flournoy v. State, 270 Ala. 448, 120 So.2d 124, on remand 40 Ala. App. 629, 120 So.2d 121 (1960); Bryant v. State,49 Ala. App. 359, 272 So.2d 286, cert. denied, 289 Ala. 740,272 So.2d 297, cert. denied, 412 U.S. 922, 93 S.Ct. 2744,37 L.Ed.2d 149 (1972). All of the cases cited were criminal cases. In Chapman v. State, 78 Ala. 463 (1885), a distinction is drawn between a civil assault and a criminal assault, pointing out *Page 331 
that criminal assault requires actual ability to "carry such intention into effect," while to sustain a civil assault, or an action for damages for a civil assault, the apparent ability to "carry such intention into effect" is sufficient. There is no occasion, however, for us to go further into a discussion of the mentioned distinction or any other distinctions between a criminal assault and a civil assault, as our decision herein does not turn upon any distinctions between the two.
The right violated by an assault is in no sense a property right. It is strictly a right to the inviolability, or security from apprehension of the violation, of the integrity of the corpus or body of a human being. As to this, there is little, if any, disagreement among the authorities. It is significantly denoted by the term "corporal hurt" as found in the definition in Tarver, supra, and the perpetuation of that definition by subsequent authorities.
The intent to injure the person of another or to invade his right of freedom from apprehension of immediate injury to his person, is implicit in the words "attempt or offer" as found in the accepted definition. In addition, an intention to violate the right of the other as to his person has been expressly held to be essential to the commission of an assault.
 "In Blackwell's Case, 9 Ala. 79, the Supreme Court, through Ormond, J., said, in defining an assault for which a criminal prosecution will lie: `An assault is defined by Blackstone to be an attempt or offer to beat another without beating him; and it seems entirely clear that, when there is no attempt to inflict personal violence on another, there can be no assault.'
 "`An assault is an attempt or offer, with force
and violence, to do a corporal hurt to another.' Bacon's Abridgment, Tit. Ass. Bat., p. 371. `Every battery includes an assault.' Bacon's Abridgment, supra.
". . . .
 "`The intent to harm is the essence of an assault.' 3 Cyc. 1067." McGee v. State, 4 Ala. App. 54, 58 So. 1008, 1009 (1912)
In other parts of the opinion in McGee, supra, the court makes it clear that at times there can be a battery, or the crime of an assault and battery, without any actual intent to cause bodily injury. The illustrations thereof, found in McGee, are not applicable here, as there was no battery, no touching of the person of Captain Duke, or anyone else.
In Hulen v. State, 25 Ala. App. 401, 147 So. 450, 451 (1933), it was held:
 "There are conditions where the drawing and presenting of a pistol may constitute an assault. Lawson v. State, [30 Ala. 14] supra; State v. Church, 63 N.C. 15. But where, as here, the evidence rebuts any presumption of an intended battery, there should be no conviction for an assault. The motion for a new trial should have been granted."
Irrespective of what all may have been in the mind of Parnell as he shot at and into the residence of Captain Duke, which may be or may have been otherwise shown, there is nothing in the substantive evidence[1] in this case, including all substantive circumstantial evidence, that justifies a finding that there was any force or violence directed at the person of Captain Duke or that there was any intent to injure Captain Duke personally, or anyone else in the house as to whom there may have been a transferable intent. The circumstances show an intent to shoot at the house and into the house, and at one time, to "shoot up" the automobile of Captain Duke, but there is no evidence whatever of any knowledge *Page 332 
upon the part of either Parnell or appellant that the house was being occupied at the time, and, even if there were, there is no evidence that any occupant in the house was at a place therein where he or she could have been injured or caused to be apprehensive of immediate personal injury by reason of a pistol's being fired at or into the house.
The circumstances as to the second shooting into the house by Parnell could well shed more light on all that Parnell may have been intending to do on both occasions, but the circumstances of the second shooting were not admitted in evidence in this case and do not constitute any part of the case against appellant, who was not present when the second incident occurred and had no connection with it.
In saying that the substantive evidence in this case fails to show an assault, and that the out-of-court statements of Parnell do not constitute substantive evidence, we do not mean to imply that if such statements were properly considered as substantive evidence, there is sufficient evidence to support the verdict. Even then the evidence, if any, tending to show an assault lacks substantiality, which is necessary to the presentation of a jury issue. The scintilla rule does not apply in a criminal case. Ex parte Grimmett, 228 Ala. 1, 152 So. 263
(1933); Smith v. State, Ala.Cr. App., 337 So.2d 53 (1976).
We think what we have stated is sufficient to show the necessity for a reversal of the judgment of the trial court. We also think that there is an additional reason for such a conclusion, which is to be found in the difference between the status of Parnell and the status of appellant, which we will now discuss.
As to the felony charge, assault with intent to murder, the State relied upon Code of Alabama, Recomp. 1958, Tit. 14, § 14, making persons concerned in the commission of a felony indictable, triable and punishable as principals if they aid or abet in the commission of the felony. As to the lesser included offense, assault, a misdemeanor, one who is an aider or abettor was triable and punishable as a principal at common law. Boydv. State, 3 Ala. App. 178, 57 So. 1019 (1912); Gratton v. State,4 Ala. App. 172, 59 So. 183 (1912).
The language of some of the cases emphasizing the requirements necessary or sufficient to make one accountable as a principal, who aids or abets another in the commission of a felony, has apparently been taken by some to mean that if one meets all of the requirements of an aider or abettor in the commission of a crime contemplated by the two or more conspirators, he becomes the aider or abettor of the other conspirator or conspirators in the commission of every crime committed by him or them in the course of overt action pursuant to the conspiracy. Such misconception should no longer prevail in view of the illuminating treatment of the subject by Judge Bookout in Howell v. State, Ala.Cr.App., 339 So.2d 138, 139
(1976), wherein the principle is accurately stated as follows:
 "Every person engaging in a joint enterprise is not automatically and equally guilty of a crime committed independently by another participant in the venture. A conspiracy necessary to fix guilt on all participants must be one in which all have a meeting of the minds (though only for an instant) to commit the crime charged. A different crime independently committed and not a foreseeable consequence of the conspiracy can hardly be charged to one who neither participated in its commission, nor aided therein, although all originally started out on some other illegal venture."
The opinion in Howell also serves well to correct any misunderstanding as to what was held in Stokley v. State,254 Ala. 534, 49 So.2d 284 (1950); Morris v. State, 146 Ala. 66,41 So. 274 (1906) and Tanner v. State, 92 Ala. 1, 9 So. 613
(1890). The cases hold that an accomplice is criminally responsible for the "proximate, natural, and logical consequences" of the criminal activity of the conspirators, butHowell cautions against an extension of what was said in the cited cases beyond the "particular facts" thereof. In each of the cases cited, *Page 333 
the crime involved was homicide. That the principle set forth of criminal responsibility of an aider or abettor for the "proximate, natural, and logical consequences" of their common criminal undertaking would have applied under the circumstances of the instant case if Captain Duke, or anyone else in his dwelling, or thereabout, were in any way personally injured, by a bullet from the pistol fired by Parnell, constitutes no reason for holding appellant criminally responsible for any intentional crime of Parnell directed at the person of Captain Duke, in the absence of any knowledge by appellant, or reasonable notice to him, that Parnell intended to injure Captain Duke.
Howell aptly quotes from Tanner as follows:
 ". . . The accomplice, as we have seen, is criminally responsible for acts which are the direct, proximate, natural result of the conspiracy formed. He is not responsible for any special act, not within the scope of the common purpose, but grows out of the individual malice of the perpetrator. — 1 Wharton Crim.Law, § 397."
The uncontroverted evidence justifies a conclusion that appellant was guilty of criminal conduct, extraordinarily reprehensible, which deserves severe punishment, but there is no substantial evidence that he was guilty of the crime of assault.
The crime of which appellant was guilty, according to the evidence relied upon by the State, but with which he was not charged, is as follows:
 "Any person who shoots a pistol or other firearm or slingshot, or who throws a stone or other missile at, into, in, through, or against a dwelling house, a schoolhouse, church building, factory, storehouse, courthouse, or house or building used for manufacturing purposes or any house or building used for the assembling of people for business or pleasure, shall be guilty of a misdemeanor, and, on conviction thereof, shall be fined not more than one thousand dollars, and may be sentenced to hard labor for the county for not longer than twelve months." Code of Alabama, Recomp. 1958, Tit. 14, § 171.
Whether the verdict and judgment be considered as the conviction of a crime charged in the indictment, of which defendant was not guilty, or the conviction of a crime of which he was guilty, but which was not charged in the indictment, the judgment must be reversed and the cause remanded.
A determination of the other numerous questions presented on this appeal would serve no useful purpose.
The foregoing opinion was prepared by Retired Circuit Judge LEIGH M. CLARK, serving as a judge of this Court under the provisions of § 6.10 of the New Judicial Article (Constitutional Amendment No. 328). His opinion is hereby adopted as that of the Court. The judgment below is hereby reversed and the cause remanded.
REVERSED AND REMANDED.
HARRIS, P.J., and BOOKOUT and BOWEN, JJ., concur.
TYSON and DeCARLO, JJ., concur in result.
[1] According to the majority rule generally and the established rule in Alabama, the self-contradictory statements of Parnell, not made on the trial but admitted in evidence in this case, do not constitute substantive evidence. Cf. Randolph v. State, Ala.Cr.App., 348 So.2d 858, cert. denied 348 So.2d 867 (1977), wherein authorities are collected, but wherein an exception is declared as to prior self-contradictory statements of a witness contained in his testimony on a previous trial of the case, including a preliminary trial, in which defendant had an adequate opportunity to cross-examine the witness.