**Leo G. ZEIGLER, Plaintiff-Appellant,**

v.

**James JACKSON, Etc. et al.,
Defendants-Appellees.**

**No. 79–4046.**

United States Court of Appeals,
Fifth Circuit.
Unit B

March 2, 1981.

this time interval that causes this to be a hard case that makes bad law.

John L. Carroll, Montgomery, Ala., for plaintiff-appellant.

Charles A. Graddick, Atty. Gen., Jack M. Curtis, Asst. Atty. Gen., Montgomery, Ala., for defendants-appellees.

Before MORGAN, FAY and FRANK M. JOHNSON, Jr., Circuit Judges.

FRANK M. JOHNSON, Jr., Circuit Judge:

Leo G. Zeigler brought this civil rights action against the Alabama Peace Officer Standards and Training Commission [Commission] and its Executive Director, James Jackson, seeking relief under 42 U.S.C.A. § 1983. His claims involve his termination in November 1977 from the police department of Adamsville, Alabama, where he had been employed since August 1977. After hearing the parties' cross-motions for summary judgment, the district court granted the Commission's motion and Zeigler appeals.

Zeigler was employed as a patrolman by the Adamsville Police Department on August 17, 1977, and was scheduled to enter the Police Academy in November 1977. A few months prior to his employment, Zeigler was convicted of two misdemeanors: on June 10, 1977, he was convicted of presenting a firearm [1] and on July 15, 1977, he was convicted for criminal provocation.[2] In Alabama any person desiring to become a police officer must meet certain minimum standards specified in the Alabama Peace Officer Standards and Training Commission Act [Standards and Training Act]. Ala. Code § 36–21–46 (1975). One of the minimum standards, the character requirement, states that:

The applicant shall be a person of good moral character and reputation. His application shall show that *he has never been convicted of a felony or a misdemeanor involving either force, violence or moral turpitude* and shall be accompanied by letters from three qualified voters of

1. "Any person who presents at another person any gun, pistol or other firearm, whether loaded or unloaded, or any Roman candle shall, on conviction, be fined not less than $10.00 nor more than $100.00." Ala.Code § 13–6–126 (1975).

2. "Whoever, by words, signs or gestures, provokes or attempts to provoke another to commit an assault or an assault and battery upon him, such other person having then and there the ability to commit such assault or assault and battery, is guilty of criminal provocation and, on conviction, shall be fined not exceeding $50.00." Ala.Code § 13-1-50 (1975).

the area in which the applicant proposes to serve as a law enforcement officer attesting his good reputation. (Emphasis added.) Ala.Code § 36–21–46(a)(5) (1975).

The Commission is the state agency responsible for supervising police training and employment under the Standards and Training Act. Ala.Code § 36–21–45 (1975). As its Executive Director, James Jackson makes the initial determination of whether or not an applicant meets the character requirements of the Standards and Training Act; his determination is then appealable to the full Commission.[3] If an applicant for a law enforcement officer certificate has a prior police record, Jackson and the Commission utilize a list of judicial decisions that define moral turpitude in determining whether an applicant's arrest or conviction involved moral turpitude; however, as no such listing of judicial decisions exists defining crimes of force or violence, the Commission members make individual interpretations[4] of whether an applicant's conviction involves force or violence. The Commission apparently has the authority to waive an applicant's convictions and to allow that applicant to attend the academy or remain on the police force; but the Commission does not have any written guidelines regarding waivers.[5]

On November 1, 1977, Jackson informed Chief Robert Freil of the Adamsville Police Department that Zeigler had to be terminated because, in Jackson's opinion, Zeigler's convictions prevented his continued employment because of the character requirement of the Standards and Training Act. Zeigler appealed Jackson's decision to terminate him to the full Commission; however, following his hearing before the Commission on December 20, 1977, the Commission ratified Jackson's termination order. Zeigler made three additional unsuccessful requests for a rehearing on the basis of several laudatory letters from prominent individuals in his community (including one from the judge who convicted him)[6] and additional facts concerning his two convictions.[7]

Zeigler then instituted the instant Section 1983 action, alleging that, because the Commission had no guidelines to use in interpreting his misdemeanor convictions as crimes involving "force or violence," its decision was arbitrary and capricious, thereby violating his substantive due process rights. Moreover, he asserted that, because the Commission had waived the character requirement for other individuals convicted of

---

3. Apparently the minimum standards delineated in Section 36-21–46 apply only to applicants seeking certification as law enforcement officers and not to an individual who has already been certified. See State Board of Corrections v. Cousins, 375 So.2d 1210 (Ala.Civ.App.1979).

4. In determining that Zeigler's convictions involved force or violence, the Commission members viewed Zeigler's presenting firearms conviction as tantamount to an assault on a police officer. See, e. g., Deposition of Edward Wright at 8.

5. The depositions submitted by various members of the Commission reflect that the members were uncertain as to whether or not the Standards and Training Act granted them the authority to grant waivers. For example, one letter Zeigler received from the Commission indicated that his rehearing request was denied because they "did not feel that they could overrule a conviction." Record at 73. Yet it is clear from the record that the Commission had in fact granted waivers to other applicants convicted of various crimes. Record at 81-88.

6. The district attorney of Jefferson County, the mayor and chief of police of Adamsville all wrote letters to the Commission on Zeigler's behalf, urging the Commission to allow Zeigler to become a police officer. Moreover, Judge Gwin, the one who convicted Zeigler, offered to testify at Zeigler's rehearing on his behalf concerning the charges against him.

7. Apparently, the deputy who brought charges against Zeigler was subsequently discharged from the force on brutality charges. According to Judge Gwin,

I did not consider (the) charges to be serious and in view of the fact that one of the Deputy Sheriffs who testified against Mr. Zeigler has now been discharged, the credibility of this Deputy would now give me great concern. In all likelihood if no consideration was given to this Deputy's testimony, Mr. Zeigler would have been found not guilty [of the presenting firearms charge]. Record at 71.

A reading of Zeigler's affidavit suggests that the deputy's complaint was racially motivated: Zeigler is black and the deputy is white.

similar or more serious crimes by not terminating those individuals,[8] the Commission's actions in terminating Zeigler violated his right to equal protection of the law. The district court granted summary judgment to Jackson and the Commission after finding that the Commission's decision to deny Zeigler admission to the police academy was "reasonably justified and supported by the evidence." Moreover, the district court found that both of Zeigler's convictions could reasonably be construed as crimes involving force or violence even in the absence of written guidelines concerning such crimes. Finally, the district court concluded that Zeigler's equal protection rights were not violated notwithstanding the Commission's waiver of the character requirement for other individuals. We disagree.

▇ Zeigler has not challenged the constitutionality of the Standards and Training Act as a whole but only its constitutionality as applied to his case. Reviewing Zeigler's equal protection claim first, we recognize that the unequal application of a state law, fair on its face, may act as a denial of equal protection. *Yick Wo v. Hopkins,* 118 U.S. 356, 373–74, 6 S.Ct. 1064, 1073, 30 L.Ed. 220 (1886). It would appear that the character requirement in Section 36–21–46(a)(5) passes constitutional muster as it is rationally related to a legitimate governmental objective of maintaining a competent, law abiding police force. However, the essence of the equal protection requirement is that the state treat all those similarly situated similarly. *See Wilson P. Abraham Construction Corp. v. Texas Industries, Inc.,* 604 F.2d 897, 904 (5th Cir. 1979).

The record reflects that at least three individuals have been retained on the police force following their convictions for the crimes of assault and forgery. The forgery conviction falls within the category of a crime involving moral turpitude as defined

by the list used by the Commission. The two assault convictions necessarily involved a finding of force or violence since assault has been judicially defined as requiring force or violence. *See, e. g., Hollingsworth v. State,* 366 So.2d 326, 330 (Ala.Crim.App. 1978). Neither criminal provocation nor presenting a firearm *requires* a finding of force or violence as in the case of assault, yet Zeigler was terminated whereas the two officers convicted of assault were allowed to remain on the police force.

▇ We agree with the district court that the equal protection clause does not require that all persons be treated identically. However, if distinctions between similarly situated individuals are to withstand an equal protection analysis, such distinctions must be reasonable, not arbitrary, and must rest on grounds having a fair and substantial relation to the object of the legislation. *See Stanton v. Stanton,* 421 U.S. 7, 14, 95 S.Ct. 1373, 1377–78, 43 L.Ed.2d 688 (1975); *cf. International Association of Firefighters, etc. v. City of Sylacauga, AL,* 436 F.Supp. 482, 488 (N.D.Ala. 1977) (distinctions between city firefighters promoted without taking statutorily required civil service exams and city policemen promoted pursuant to civil service statute were not rationally related to objectives of statute). The Commission has failed to offer a rational justification for the differential treatment accorded to Zeigler, who was discharged, and the three police officers who were retained. Since the other officers equally subject to the character requirement were not denied employment because of their convictions, the Commission's termination of Zeigler violated his right to equal protection of the law. *See Gosney v. Sonora Independent School District,* 603 F.2d 522, 527 (5th Cir. 1979); *cf. Louis v. Supreme Court of Nevada,* 490 F.Supp. 1174, 1183 (D.Nev.1980) ("Where waivers of

---

8. The record reflects that Marmer Haskins, convicted of Third Degree Assault, and Lonnie Mitchell, convicted of Forgery, were both allowed to enter the Police Academy; William Dougherty, who was an officer when he was convicted of Assault and Battery, had his certificate reinstated by the Commission. Haskins and Dougherty are white; Mitchell's race cannot be determined from the record. At least six other individuals convicted of various misdemeanors (such as *Disorderly Conduct, Disobeying a Police Officer, Public Drunkenness*) were allowed to enter the Academy. Record at 81 -88.

a rule are not granted with consistency and no explanation is given for the disparity of treatment, a finding of denial of equal protection may be appropriate.")

Zeigler's other contention is that the Commission acted arbitrarily and capriciously in violation of his substantive due process rights by finding that Zeigler's misdemeanor convictions involved force or violence and required his discharge. The Commission and Jackson concede that they had no written guidelines defining crimes of force or violence and that they relied on their subjective, commonsensical interpretation of which crimes involved force or violence; further, their depositions reflect their misconception that Zeigler was charged with the more serious charge of assaulting an officer rather than the misdemeanor, presenting a firearm.

The Commission's actions for substantive due process purposes are also subject to the rationality standard. *Gosney, supra,* 603 F.2d at 526. As herein noted, the character requirement is reasonably related to the state's legitimate interest in maintaining the quality of its police force. Moreover, the Standards and Training Act grants the Commission the discretion to promulgate standards relating to the physical, mental and moral fitness of any applicant for a law enforcement certificate that are consistent with the minimum standards in the Act. Ala.Code § 36–21–45(3) (1975). The Commission's list defining crimes involving moral turpitude would certainly fall under this provision of the Act: had Zeigler's misdemeanors involved moral turpitude, it is clear his substantive due process argument would have little force. The district court held that until Zeigler's record was cleared the Commission's decision was not arbitrary or capricious. Yet neither the Commission nor the district court specified how Zeigler could "clear" his record, especially since he tried to obtain a rehearing on three separate occasions. In *Andrews v. Drew Muni. Separate School District,* 507 F.2d 611, 614 (5th Cir. 1975), the Court stated that, if a state investigated the moral character of an individual upon whom it intends to bestow a benefit or to impose a burden, due process requires that such inquiry look to *present* moral character. However, since we have already concluded that the Commission's actions in terminating Zeigler's employment violated the equal protection clause of the Fourteenth Amendment, we do not decide the issue of whether the Commission's lack of guidelines defining crimes of force or violence violated Zeigler's substantive due process rights.

We stress that nothing in this opinion prevents the Commission from promulgating written guidelines defining crimes involving force or violence or delineating grounds for waivers to the character requirement.[9] The Commission simply may not interpret the minimum standards of the Standards and Training Act in a discriminatory manner. As there are no material facts in dispute, we hold that Zeigler is entitled to judgment as a matter of law. *United States Steel Corporation v. Darby,* 516 F.2d 961 (5th Cir. 1975). Accordingly, we REVERSE and REMAND to the district court for proceedings consistent with this opinion.

---

9. For example, in *Mieth v. Dothard,* 418 F.Supp. 1169, 1182 (M.D.Ala.1976) (three-judge court), *modified sub nom. Dothard v. Rawlinson,* 433 U.S. 321, 97 S.Ct. 2720, 53 L.Ed.2d 786 (1977), the court held that a valid waiver provision could save the height and weight requirements for state troopers from being discriminatory on the basis of sex. But in *Mieth,* the court found that waiver requests as administered by James Jackson and the Alabama Peace Officer Standards and Training Commission were administered in a remarkably informal and subjective procedure that hardly comported with fundamental fairness. *Id.* at 1183.