Billie Allen was convicted of the murder of Charles Darren Andrews and sentenced to twelve years in the penitentiary. He raises three questions on appeal.
 I
First, Allen argues that the State's evidence was insufficient to convict him of murder because it was his brother-in-law, Albert Stringer, who shot the deceased, and there was no evidence proving that Allen conspired with Stringer to kill Andrews.
The State's evidence established that, several months prior to the fatal shooting, Andrews (the murder victim) had beaten Allen severely in a barroom brawl. Allen later stated that he would "get even" with Andrews, saying "pay-back's gonna be hell", and bragging that he could tell his brother-in-law Stringer to "blow [someone's] brains out and he'd do it." Furthermore, the State presented evidence that, on the night of the shooting, Allen, Stringer and Ricky McPherson went out looking for Andrews and on that occasion Allen told McPherson to put a gun in his boot.
The three men went to four different bars in search of Andrews and eventually ended up at the Pink Panther Club in Eight Mile, Alabama, at 1:30 A.M. There a fight erupted between Andrews and Allen, and when it appeared that Andrews was getting the better of Allen, Allen called out to Stringer to "shoot". Stringer testified that he pulled a gun and told Andrews to stop beating Allen, Andrews broke off the fight with Allen, and Andrews began advancing on Stringer. Stringer said he warned Andrews three times to stop before he finally shot and killed Andrews. Other eyewitnesses testified, however, that Stringer *Page 1033 
shot Andrews when Allen told him to "shoot".
Allen claims that Stringer's firing was an independent act done in self-defense and, even assuming a conspiracy existed between the two men to kill Andrews if necessary to protect Allen, all hostilities between Allen and Andrews had ceased by the time Stringer shot Andrews. Thus, Allen insists the supposed conspiracy had ended and he was not responsible for Stringer's act done apart from the conspiracy.
Allen cites Hollingsworth v. State, 366 So.2d 326
(Ala.Cr.App. 1978), cert. denied, 366 So.2d 333 (Ala. 1979), and Howell v. State, 339 So.2d 138 (Ala.Cr.App. 1976), for the proposition that an accomplice is criminally responsible only for those acts committed as a result of the conspiracy, but is not liable for the independent acts of a co-conspirator separate and apart from the conspiracy.
Initially, we note that the evidence of when Stringer shot Andrews was in dispute. Some eyewitnesses said the shot followed immediately upon Allen's command to Stringer to "shoot", while Stringer claimed to have given Andrews three warnings before firing in self-defense. When we view the evidence in the light most favorable to the State, as we are required to do, see Snider v. State, 406 So.2d 1008, 1012
(Ala.Cr.App.), cert. denied, 406 So.2d 1015 (Ala. 1981), the State's case was more than sufficient to prove that Allen and Stringer set out to find and kill Andrews on the night in question, and that Andrews was in fact shot by Stringer following Allen's instruction.
Moreover, even if we accept the defendant's theory of the case, that Stringer shot Andrews not to protect Allen but to protect himself, we do not believe that Hollingsworth andHowell support defendant's contention that he is not liable for Stringer's conduct.
The accomplice is criminally responsible for acts which are the direct, proximate, natural result of the conspiracy or are a foreseeable consequence of the conspiracy.
 "Every person engaging in a joint enterprise is not automatically and equally guilty of a crime committed independently by another participant in the venture. A conspiracy necessary to fix guilt on all participants must be one in which all have a meeting of the minds (though only for an instant) to commit the crime charged. A different crime independently committed and not a foreseeable consequence of the conspiracy can hardly be charged to one who neither participated in its commission, nor aided therein, although all originally started out on some other illegal venture." Howell, 339 So.2d at 139 (emphasis added).
See also Hollingsworth, 366 So.2d at 332-33.
The facts that the defendant wanted to get even with Andrews, boasted that he could get Stringer to kill for him, went looking for Andrews, and told a companion to conceal a weapon the very night of the shooting make it entirely plausible that the killing of Andrews by Stringer was a "foreseeable consequence" of a plan to shoot Andrews in defense of Allen.
Finally, while the trial court gave a comprehensive charge on self-defense, the jury simply did not accept that testimony, and, upon review, we find abundant evidence to warrant their verdict. "Even though there was evidence to show self-defense, the jury was justified in concluding that some of the elements of self-defense, were lacking." Burnett v. State,380 So.2d 1021, 1022 (Ala.Cr.App. 1980). Not only was the victim unarmed when he was shot, but Stringer could have retreated to a place of safety before resorting to deadly force.
 II
Allen contends that the trial court erred in refusing the following written requested charge:
 "The Court charges the jury that the burden of proof is not on the Defendant to establish self-defense by a preponderance of the evidence; but if all the evidence raises in the minds of the jury a *Page 1034 
reasonable doubt as to whether or not the Defendant acted in self-defense, you must find him not guilty."
There was no error in the refusal of the charge. The matter was "substantially and fairly given to the jury in the court's general charge or in charges given at the request of parties", Alabama Code § 12-16-13 (1975), as follows:
 "There is also a defense in this case of self-defense. Now I'll say this to you before I tell you what self-defense is and what it means under the laws of our State. Self-defense or the burden does not shift to the Defendant by reason of this defense. The burden is and always remains with the State to prove the guilt of the Defendant beyond a reasonable doubt. And self-defense is a complete defense. If you find that the Defendant, or in this case Stringer who actually pulled the trigger, acted in self-defense either in defense of himself or in defense of another person it would be a complete defense to either murder or manslaughter and your verdict would be not guilty."
. . . . .
 "The Court charges the jury that the Defendant is never required to prove his innocence and the burden stays with the prosecution to prove his guilt beyond all reasonable doubt.
 "The Court charges the jury that at no time during the trial is the Defendant called upon to produce any evidence as to his innocence and that the State has the continuous burden of proving that he is guilty beyond all reasonable doubt."
 III
Allen claims that his motion for mistrial should have been granted after the following remarks in closing argument by the State:
 "MR. COPELAND [Assistant District Attorney]: You've heard the expression that anything less than a hundred percent justice is injustice. Another saying is that we ask you that to have justice it's got to be a full cup of justice. Well right now we've only got half a cup: Albert Stringer convicted of murder. And that jury back then didn't buy that garbage about stop three times self-defense either and neither do you.
 "MR. MARSAL [Defense Counsel]: Wait just a minute. Wait. I want to object to that. It's highly improper.
 "THE COURT: I think so. Ladies and gentlemen, you're not to concern yourselves with what happened in the other trial. They were different issues and that's not what you're here to decide. Go ahead, Mr. Copeland.
 "MR. COPELAND: You all can write the last chapter on the Billie Allen/Albert Stringer murder adventure that night. And you can give us a full cup of justice because I submit to you it's not only injustice, it's throwing the other half of the cup of justice on the floor if you let the trigger man go and the architect of it walk. It's just that simple.
 "I ask you on behalf of your State and County to do your job, to return a verdict that speaks justice, a full cup of justice in this case, and I have every confidence that you will do so. Thank you very much.
 "MR. MARSAL: I have a motion to make outside the presence of the jury.
"THE COURT: Just step up here then.
 "(Out of the hearing of the jury but on the record, the following occurred at the bench:)
 "MR. MARSAL: I move for a mistrial on the grounds of the impropriety of the Prosecutor's argument. First I made an objection when he commented about the jury having found Stringer guilty and that this man should not go free. The Court admonished him. And then he came back and said the same thing only using different words that the trigger man can go and then the architect of the crime go free. I submit to the Court it's improper and there's no instruction to the jury that the Court could give that would cure it.
"THE COURT: Motion denied. *Page 1035 
"MR. MARSAL: We except."
While the prosecutor's statement, "And that jury [in Stringer's trial] back then didn't buy that garbage about stop three times self-defense either and neither do you", was improper, its prejudicial effect was cured by the trial court's prompt instruction to the jury to disregard it. "Where the trial court immediately charges the jury to disregard the prosecutor's improper remarks, there is a prima facie presumption against error." Nix v. State, 370 So.2d 1115, 1117
(Ala.Cr.App.), cert. denied, 370 So.2d 1119 (Ala. 1979).
Allen concedes that the trial court's curative charge removed the prejudicial effect of the State's first remark, but argues that the comments made by the prosecutor after the judge's instructions were equally prejudicial and were ineradicable. In our judgment, the State's succeeding comments were within the range of permissible argument because they did not contain the suggestion that the Allen jury should disbelieve the self-defense evidence just because the Stringer jury had been unconvinced by the testimony. The prosecutor's later remarks merely pointed out Stringer's guilt and urged the jury to find Allen guilty as his partner in crime. We find no impropriety in the State's exhortation not to "let . . . the architect of [the murder] walk." This comment was nothing more than an appeal for law enforcement, see Fletcher v. State, 52 Ala. App. 303, 307,291 So.2d 757, 760 (1973). The prosecutor's reference to "a full cup of justice", while an obvious allusion to Stringer's conviction, was not improper because Stringer's conviction for murder was a matter of evidence in the defendant's trial. Although it is usually impermissible for the State to refer to the conviction of a co-defendant for the same crime, see Stokesv. State, 462 So.2d 964 (Ala.Cr.App. 1984), the impropriety results from the attempt to argue a fact not in evidence, see Annot., 48 A.L.R.2d 1016, 1018 (1956). Where, as here, the fact of the co-defendant's conviction is admitted at defendant's trial, it is a proper subject for comment by the prosecutor in closing argument.
The judgment of the circuit court is affirmed.
AFFIRMED.
All Judges concur.