OPINION OF THE COURT
Edward M. Horey, J.
The plaintiff, Earl E. Crouse, resides on the Allegany Reservation of the Seneca Nation of Indians, of which he is an enrolled member. On October 5, 1978, he obtained a loan from defendant, First Trust Union Bank of Salamanca, New York, in the stated sum of $1,400. Such $1,400 loan represented a balance of $928.51 due from the original financing of a 1972 Pontiac Grand Prix automobile and subsequent loans in which that vehicle was pledged as collateral security. In addition, the loan represented $471.49 of new money advanced at the time of the execution of the loan agreement dated October 5, 1978.
As stated, the purpose of the loan was to pay off back bills. As part of this loan agreement, the bank obtained a new security interest in the plaintiff’s 1972 Pontiac Grand Prix automobile. The plaintiff fell behind in the loan payments. He was unable to obtain employment because of physical limitations resulting from an injury in May, 1978.
On June 3, 1980, the defendant bank summarily seized the plaintiff Crouse’s automobile from a garage located within the boundaries of the Allegany Reservation. An employee of the defendant bank called several hours before *90 seizure of the car to advise the plaintiff to remove his personal belongings. The bank gave no advance written notice of intent to repossess to the plaintiff. The bank did not advise the plaintiff of any opportunity to be heard before repossession, nor was any judicial hearing noticed or held in any State or Federal court. Nor did the bank make any effort to contact any judicial or governmental body or police officer of the Seneca Nation in advance of its self-help repossession.
Following repossession on June 3, 1980, the defendant bank sent the plaintiff Crouse a letter of intent to sell the automobile at public auction to be held on June 19, 1980. After failing to sell the automobile at the auction, the bank continued to retain possession. On September 17,1980, the plaintiff Crouse commenced an action for a declaratory judgment.
On October 16, 1980, Special Term, Supreme Court, on return of a motion, directed that the defendant bank be restrained from disposing of the automobile pending determination of the action. Plaintiff’s application for immediate return of the car was denied.
Plaintiff now brings this motion for summary judgment seeking a declaration that section 9-503 of the Uniform Commercial Code is unconstitutional, together with additional relief prayed for.
This court is well aware of the fact that it is section 9-503 of the Uniform Commercial Code that forms the legal basis on which the vast majority of sales of automobiles, appliances and other personalty are sold on a time payment basis, not only in New York, but in other States as well. It is that statute that fixes the rights and obligations of both buyer and seller. In those instances in which automobiles, appliances and other personalty are not secured on initial sale, but are subsequently pledged as collateral security for loans, it is the same section 9-503 of the Uniform Commercial Code that fixes the rights and obligations of the lender and the borrower. Thus, the ultimate determination of the issue raised in this case will undoubtedly have extensive commercial ramifications. As a consequence, this court has attempted to examine into the law as extensively as possible.
*91 Section 9-503 of the Uniform Commercial Code provides: “Unless otherwise agreed a secured party has on default the right to take possession of the collateral. In taking possession a secured party may proceed without judicial process if this can be done without breach of the peace or may proceed by action. If the security agreement so provides the secured party may require the debtor to assemble the collateral and make it available to the secured party at a place to be designated by the secured party which is reasonably convenient to both parties. Without removal a secured party may render equipment unusable, and may dispose of collateral on the debtor’s premises under Section 9-504”. (Emphasis added.)
Note is made that in addition to authorizing self-help, repossession of the personal property which had been sold subject to a security interest (see definition of “collateral” in Uniform Commercial Code, § 9-105, subd [1], par [c]), section 9-503 of the Uniform Commercial Code also authorizes the disposition of such property by a sale under section 9-504 of the Uniform Commercial Code.
Section 9-504 of the Uniform Commercial Code provides, in relevant part: “(1) A secured party after default may sell, lease or otherwise dispose of any or all of the collateral in its then condition or following any commercially reasonable preparation or processing. Any sale of goods is subject to the Articles on Sales (Article 2)”.
It is of paramount importance to the decision in this case to note that at no place does the “disposition” authorized under section 9-504 of the Uniform Commercial Code or the “sale” provided for under article 2 of the Uniform Commercial Code require a prior judicial hearing,. (See Uniform Commercial Code, art 2, in particular, § 2-706, entitled “Seller’s Resale Including Contract for Resale”.)
In issue in this action is whether or not the provisions of section 9-503 and those of section 9-504 of the Uniform Commercial Code, which are included by specific reference in section 9-503, are violative of either the due process clause of the Federal Constitution, or the due process clause of the Constitution of the State of New York, or of both such clauses.
*92 What must be determined is whether either or both due process clauses permit the enforcement of a valid possessory lien first by an ex parte repossession and secondly by a nonjudicial sale of a debtor’s property all without affording the debtor an opportunity to be heard.
In 1973 in Frost v Mohawk Nat. Bank (74 Misc 2d 912), the Supreme Court in Rensselaer County made a specific ruling on the questions. There it was held that the self-help repossession procedures of section 9-503 of the Uniform Commercial Code were not violative of the due process clause of either the Federal or State Constitution. In rendering this decision, the learned Justice noted, however, that many tort writers were expressing opinions to the contrary as a consequence of determinations being made by the Supreme Court of the United States.
A year later in 1974 in Hunt v Marine Midland Bank Cent. (80 Misc 2d 329), in a Supreme Court action in Onondaga County, the decision reached in Frost v Mohawk Nat. Bank (supra) was reaffirmed.
While our State courts were addressing the problem of due process in the enforcement of creditor’s rights, so also were the Federal courts and the Supreme Court of the United States.
In 1969 the Supreme Court of the United States, a Wisconsin statute that permitted a creditor to garnishee a defendant’s wages before a trial and without either notice or hearing, was declared an unconstitutional violation of the due process clause of the Federal Constitution in Sniadach v Family Fin. Corp. (395 US 337).
In 1972, the Supreme Court of the United States declared Florida and Pennsylvania statutes which permitted creditors to seize chattels without notice or a prior hearing to challenge the seizure were unconstitutional and violative of the Fourteenth Amendment of the Federal Constitution in Fuentes v Shevin (407 US 67).
In 1974, in Mitchell v W. T. Grant Co. (416 US 600), Louisiana statutory procedures which authorized an order of sequestration without notice or an opportunity to be heard met a different fate in the Supreme Court of the United States. They were held constitutional. Note was *93 made by the court that the Louisiana sequestration order only issued upon consent of a Judge and a verified affidavit. The court further noted that the creditor was required to post a bond to guarantee the buyer against damage or expense and that the debtor could seek dissolution of the sequestration order by filing a bond or contesting the grounds for the order. If the buyer followed either course, the creditor was then required to prove the debt, the default and the amount due and owing.
It is of particular importance to note that the Supreme Court specifically rejected the contention of the plaintiff that the due process clause of the Fourteenth Amendment guaranteed to him, as the buyer, the use and possession of the goods until all issues were resolved after a full advertising proceeding. Noting that the requirements of due process under the Federal Constitution “‘are not technical, nor is any particular form of procedure necessary’ ”, the court said that “[c]onsidering the Louisiana procedure as a whole” the State “ha[d] reached a constitutional accommodation of the respective interests of buyer and seller”. (416 US 600, 610, supra.)
The decision in Sniadach (supra) was distinguished with the notation that there the creditor had no prior interest in the property which was attached in contrast to a situation wherein a creditor seeks to repossess sold property on which he had retained a lien to secure the purchase price. (See Mitchell v W. T. Grant Co., supra, pp 614-615.)
The decision in Fuentes (supra) was distinguished on the grounds that the procedures provided in the Pennsylvania and Florida statutes did not require the submission of a verified petition by a creditor to a Judge for evaluation before attachment could be ordered. (See Mitchell v W. T. Grant Co., supra, pp 615-616.)
In 1975, in North Georgia Finishing v Di-Chem, Inc. (419 US 601), a Georgia garnishment statute which contained no provision for an early hearing at which the creditor would be required to demonstrate at least probable cause for the garnishment was held unconstitutional and in violation of the due process clause of the Fourteenth Amendment.
*94 In making its determination, the court pointedly noted (p 606) its earlier decision in Fuentes (407 US 67, supra) and said: “Because the official seizures had been carried out without notice and without opportunity for a hearing or other safeguard against mistaken repossession they were held to be in violation of the Fourteenth Amendment”. The court then held (p 606) “The Georgia statute is vulnerable for the same reasons”.
In 1978 in Flagg Bros. v Brooks (436 US 149), a New York statute authorizing the enforcement of a warehouseman’s lien set forth as section 7-210 of the Uniform Commercial Code was held constitutional within the meaning of the Fourteenth Amendment of the Federal Constitution. In rendering its decision the court said (p 166): “Here, the State of New York has not compelled the sale of a bailor’s goods, but has merely announced the circumstances under which its courts will not interfere with a private sale”.
A footnote to the majority opinion is of significance because it addresses the issue of delegation of sovereign prerogatives and the involvement of “State action”, matters which have become of key importance in later decisions by the courts of New York State.
“It would intolerably broaden, beyond the scope of any of our previous cases, the notion of state action under the Fourteenth Amendment to hold that the mere existence of a body of property law in a State, whether decisional or statutory, itself amounted to ‘state action’ even though no state process or state officials were ever involved in enforcing that body of law”. (436 US 149, 160, n 10, supra.)
In the same footnote, the decisions of North Georgia Finishing v Di-Chem, Inc. (supra); Fuentes v Shevin (407 US 67, supra) and Sniadach v Family Fin. Corp. (395 US 337, supra) were distingushed as follows: “In each of those cases a government official participated in the physical deprivation of what had concededly been the constitutional plaintiff’s property under state law before the deprivation occurred”. (436 US 149, 160, n 10, supra.)
It was at this state of the law that the now celebrated case of Sharrock v Dell Buick-Cadillac (45 NY2d 152) was decided in our Court of Appeals in July, 1978. Involved *95 were those sections of the Lien Law of this State which authorized a garageman to foreclose his possessory lien for repairs and storage charges, viz: sections 200, 201, 202, and 204 of the Lien Law.
Noting that the recent decision by the Supreme Court of the United States in Flagg Bros. v Brooks (436 US 149, supra) had held that the provisions of section 7-210 of New York’s Uniform Commercial Code referable to a warehouseman’s lien were constitutional under the Fourteenth Amendment of the Federal Constitution, and noting similarities between the involved provisions of the Lien Law concerning the garageman’s lien and those of the Uniform Commercial Code referable to the warehouseman’s lien, the majority opinion in the Court of Appeals said of the Flagg Bros, decision in the Supreme Court “the similarities between section 7-210 and the statutes at issue here might preclude any contrary finding by this court”. (45 NY2d, at p 159; emphasis added.)
While a footnote of the majority opinion sets forth argument that the involved provisions of the New York Lien Law might be violative of the due process clause of the Federal Constitution by analogy to the decisions of the Supreme Court in the Sniadach (395 US 337, supra), Fuentes (407 US 67, supra) and North Georgia Finishing (419 US 601, supra) cases, the court, nonetheless, studiously avoided a determination of the constitutionality of the challenged statutes relating to the garageman’s lien so far as whether or not they were violative of the Fourteenth Amendment of the Federal Constitution. Instead, the court pointedly limited its holding to a determination that such provisions were violative of the due process clause of the New York State Constitution only.
The four-Judge majority of the court in Sharrock (supra) rendered its decision despite the strongly stressed arguments of the three dissenting Judges that the provisions of the State and Federal due process clauses should be held coextensive and that if extension of the provisions of the State due process clause were permitted beyond that in the Federal Constitution, it could lead to the anomalous result that if the New York warehouseman’s lien statute, upheld by the Supreme Court in Flagg Bros. v Brooks (supra) was *96 subsequently attacked in the State courts of New York, under the application of stare decisis it would be declared unconstitutional as violative of the New York Constitution. In addition, the dissenting Judges opined that future attacks upon similar provisions of law providing for foreclosures of liens without prior judicial hearing would of necessity be successful. (See Jasen, J., dissenting, 45 NY2d 152, 169, 173-174, supra.)
The comments of the dissenting Judges in Sharrock v Dell Buick-Cadillac (supra) were prophetic. In August, 1980, in the case of Svendsen v Smith’s Moving & Trucking Co. (76 AD2d 504), the Appellate Division, Second Department, held that the very provision of the Uniform Commercial Code (§ 7-210) that had been upheld as constitutional by the Supreme Court in Flagg Bros. v Brooks (supra) must now be held unconstitutional under the provisions of the New York State Constitution. The reason for its unconstitutionality was its violation of the due process clause of the State Constitution as that clause had been construed and applied in Sharrock v Dell Buick-Cadillac (supra). In rendering its Per Curiam decision, the Second Department said (p 507): “As in Sharrock (supra), the State’s authorization of ex parte foreclosure of the warehouseman’s lien is violative of State due process as it deprives debtors of a significant property interest without a prior opportunity to be heard”. (Emphasis added.)
Returning now to those statutory provisions of law involved in the case at bar, viz: section 9-503 of the Uniform Commercial Code, together with those of section 9-504 of the Uniform Commercial Code which are included by specific reference, and measuring the cited statutory provisions against the due process clause of our State Constitution as construed in Sharrock v Dell Buick-Cadillac (supra), this court finds them constitutionally deficient.
Essentially the provisions of section 9-503 and those of section 9-504 of the Uniform Commercial Code, included by reference, permit the seizure and sale of valuable personal property without giving the debtor the opportunity to be heard or otherwise challenge the validity of the creditor’s lien. It is for this reason this court holds such provisions to violate the due process clause of the *97 Constitution of the State of New York. (NY Const, art I, §6.)
In explanation of its decision in Sharrock v Dell Buick-Cadillac (45 NY2d 152, 167, n 7, supra) the Court of Appeals said: “We hold only that a garageman with a possessory lien on a repaired motor vehicle must afford its owner an opportunity to be heard before his ownership interest may be extinguished”.
In Svendsen v Smith’s Moving & Trucking Co. (76 AD2d 504, 506-507, supra), the Appellate Division, Second Department, said: “Both the garageman’s and warehouseman’s liens permit the enforcement of a valid possessory lien by an ex-parte nonjudicial sale of the debtor’s property without affording the debtor an opportunity to be heard (cf. Lien Law, §§ 200-202, 204 with Uniform Commercial Code, § 7-210). By these provisions, New York State has extended creditor’s rights beyond the common law and ‘has so entwined itself into the debtor-creditor relationship as to constitute sufficient and meaningful State participation which triggers the protection afforded by our Constitution’”.
When applied to defendant First Trust Union Bank, a creditor with a lien on a motor vehicle sold to the plaintiff, Earl E. Crouse as a purchaser, this court holds that the provisions of section 9-503 and those of section 9-504 of the Uniform Commercial Code which are included by reference, must afford that purchaser an opportunity to be heard before such purchaser’s interest therein may be extinguished. In the opinion of this court, the determination of State constitutional requirements reached by the Court of Appeals in Sharrock v Dell Buick-Cadillac (supra) not only permits, but compels such a result.
If there is a difference between the application of the constitutional principle of law determined and applied in Sharrock v Dell Buick-Cadillac (supra) and in Svendsen v Smith’s Moving & Trucking Co. (supra) from the principle for application in the case at bar, that difference must await disclosure in the appellate courts. For frankly, such difference, if it exists, is too subtle for comprehension by this court at this time.
*98 In view of the decision which has been reached, it is not necessary to determine the constitutionality of section 9-503 under the provisions of the Federal Constitution. Further, it is not necessary to decide the additional question of whether there have been separate and different violations of the purchaser’s rights arising under treaties between the United States and the Seneca Nation by dint of the fact that the subject repossession took place on the lands of the Seneca Nation of Indians and from a purchaser who was a member of that Indian Nation. Neither is it necessary to determine whether or not the creditor bank violated provisions concerning consumer credit protection under the Truth in Lending Act codified in section 1601 et seq. of title 15 of the United States Code.
To the extent that the prior decision of Frost v Mohawk Nat. Bank (74 Misc 2d 912 supra) and Hunt v Marine Midland Bank Cent. (80 Misc 2d 329, supra) held the provisions of section 9-503 of the Uniform Commercial Code constitutional within the meaning of the due process clause of the Constitution of the State of New York (art I, § 6), this court is convinced they were effectively overruled by the later determination made in Sharrock v Dell Buick-Cadillac (45 NY2d 152, supra). Thus, in the opinion of this court, they do not constitute contrary judicial determinations to that reached in the case at bar.
The motion of the plaintiff for summary judgment insofar as it seeks judgment declaring the provisions of section 9-503 of the Uniform Commercial Code, together with those provisions of section 9-504 specifically included by reference and incorporated in section 9-503 of the Uniform Commercial Code unconstitutional in violation of section 6 of article I of the New York State Constitution is granted. In all other respects the motion is denied.