KIMBLE *v.* UNIVERSAL TV RENTAL, INC.

[Cite as Kimble v. Universal TV Rental (1980), 65 Ohio Misc. 17.]

(No. M-79-CV-E-022889—Decided August 20, 1980.)

*Mr. Leo P. Ross,* for plaintiff.

*Mr. Eric R. Gilbertson,* for defendant.

Franklin County Municipal Court.

CRAWFORD, J.  This cause came to be heard on plaintiff's (Pamela J. Kimble) complaint filed against defendant (Universal TV Rental, Inc.) which, in essence, alleges that on or about July 31, 1979, the defendant invaded her privacy by forcibly entering her home and unlawfully taking a television set which was the subject of a rental agreement with option to purchase. Plaintiff further alleges that due to the willful and wanton misconduct of the defendant she suffered great distress and insecurity in her dwelling thereby causing her compensatory damages in the amount of $700. Plaintiff further seeks to recover punitive damages against the defendant in the amount of $9,300.

Trial was held to the court on July 21, 1980, and the following are the court's Findings of Fact and Conclusions of Law:

Findings of Fact

1. On or about June 2, 1978, plaintiff and defendant entered into a "Rental Agreement With Option To Purchase" a color television. The written agreement provides in part:

"OWNER'S RIGHTS TO ENTER AND TAKE POSSESSION: The Owner and its agents upon the termination of this agreement are specifically authorized to peaceably enter upon any premises where the property may be found and renter agrees to allow owner to take possession in accordance with this agreement and renter agrees to indemnify owner and its agents for all costs, expenses, and damages occurring directly or indirectly from or related to the taking possession and the removal of said property."

2. In addition, the parties stipulated that the plaintiff made payments on such agreement from June 2, 1978 through May 3, 1979 (The May payment covered a term through May 31, 1979). No payments were made on the agreement for the months of June and July of 1979. The payments made by the plaintiff were as follows:

$58 on June 2, 1978, covering the month of June;
$58 on July 8, 1978, covering the month of July;
$58 on Aug. 10, 1978, covering the month of August;
$58 on Sept. 14, 1978, covering the month of September;
$58 on Oct. 10, 1978, covering the month of October;
$58 on Nov. 7, 1978, covering the month of November;
$58 on Jan. 8, 1979, covering the month of December 1978;
$116 on Feb. 26, 1979, covering the months of January and February 1979;
$58 on March 9, 1979, covering the month of March 1979;
$106 on May 3, 1979, covering the months of April and May 1979.

Total payments amounted to $686.

At no time did defendant object, either in writing or orally, to the late payments which were made by the plaintiff.

3. Regardless of the provisions of the agreement,[1] the

---

[1] There appears to be a conflict with regard to the written document (*i.e.*, 78 weeks at $16 week) and the testimony of the witnesses. However, at trial the testimony was not in dispute. The amount of payoff, as of July 31, 1979, was $250.60 and the amount if paid to completion of the agreement was $358. If the court uses the

court finds that on or about July 31, 1979, plaintiff had a payoff balance on the television of $250.60. Thus, on July 31, 1979, the debtor had paid in excess of 65 percent of the cash price owed on the rental agreement with the option to purchase.

4. At no time did plaintiff sign, after default, a statement renouncing or modifying her rights with respect to repossession as provided in R. C. 1309.48. Plaintiff testified that she contacted the defendant during the month of July 1979, regarding her payoff balance and a possible modification of the written agreement; however, the court does not find that this testimony is sufficient to create an oral modification of the written agreement as provided in R. C. 1302.12.

5. At approximately 9:15 a.m. on July 31, 1979, plaintiff left her apartment, locked the only door leading into the apartment, and went to the airport. Shortly after plaintiff left her apartment, two representatives of the defendant, Richard Baird and Alan Dowdy, went to plaintiff's apartment building to repossess the television set covered under the rental agreement with an option to purchase. Neither Baird nor Dowdy, nor any other representative of the defendant, had contacted the plaintiff prior to July 31, 1979 regarding the repossession nor had anyone from the defendant's office received permission from the plaintiff to repossess the television set. Baird and Dowdy first went to the apartment of the resident manager (Mr. William Mitchell) and asked permission to be let into the premises of the plaintiff. Mr. Mitchell refused Baird and Dowdy admittance into the locked premises of the plaintiff. After this initial contact with Baird and Dowdy, Mitchell had no further contact with the two men.

6. Upon returning to her apartment, plaintiff found that the lock to her door had been turned, and, upon entering her premises, found that the television set covered under the agreement with defendant had been taken. Fearing that a burglary had taken place, plaintiff contacted the Columbus Police Department to report a theft of her television set. Upon

---

$250 figure as the payoff, the plaintiff had paid 73 percent of the contract price as of July 31, 1979 (686/936). If the court uses the $358 figure as the payoff, the plaintiff had paid 65 percent of the contract price as of July 31, 1979 (686/1044). Considering the conclusions of law, the court does not have to determine which figure is to be applied for purposes of R. C. 1309.48(A) and 1317.13.

investigation by plaintiff and the police, it was determined that the following note (written on a brochure) was left in her premises: "Paula—We have taken our television. Please call Manager 443-9471." Upon reading this note, the police officer determined that he would not conduct a further investigation.

7. Based upon the direct and circumstantial evidence, the court finds that Richard Baird and Alan Dowdy, representatives of the defendant and without authority from plaintiff, forcibly entered plaintiff's locked apartment through the door and took plaintiff's television set.[2]

8. On July 31, 1979, Richard Baird was the assistant manager of the defendant acting within the scope of his employment under orders (direct or implied) of the defendant to repossess plaintiff's television set. Neither Mr. Baird, nor any employee under his supervision, had received instructions or training from the defendant or its representative with regard to the methods that were to be used in repossessing television sets inside the locked residences of customers.[3]

9. Subsequent to the taking of the television set by the defendant, plaintiff contacted the defendant but there was no effort on the part of the defendant to grant plaintiff her rights as provided under R. C. Chapters 1309 and 1317.

### Conclusions of Law

I. The defendant had no right to enter plaintiff's locked apartment for the purpose of repossessing the television, and such action amounted to a trespass.

The right of a secured party to engage in self-help repossession has been the subject of much legal debate during the past decade. See Page's Analysis to R. C. 1309.46 and *Sniadach* v. *Family Finance Corp.* (1969), 395 U. S. 337; *Fuentes* v. *Shevin* (1972), 407 U. S. 67; *North Georgia Finishing* v. *Di-Chem* (1975), 419 U. S. 601; *Morris* v. *First Nat'l Bank* (1970), 21 Ohio St. 2d 25; Annotation, Validity, Under State Law, of Self-Help Repossession of Goods Pur-

---

[2] Mr. Dowdy did not testify. The court inquired of Mr. Baird as to the nature and circumstances of the entry into the premises; however, Mr. Baird refused to answer such questions asserting his Fifth Amendment right not to incriminate himself.

[3] Mr. Baird testified that he never entered into locked residences of customers without their consent; however, the court has concluded that on July 31, 1979, defendant's representative or representatives (Baird and/or Dowdy) did, in fact, enter the locked premises of the plaintiff.

suant to U.C.C. §9-503, 75 A.L.R. 3d 1061; Annotation, Replevin or Claim-and-Delivery, 45 A.L.R. 3d 1233; Annotation, Validity Under Federal Constitution and Law, of Self-Help Repossession Provision of §9-503 of U.C.C., 29 A.L.R. Fed 418. The courts disfavor self-help repossession because, if abused, the process invades the legitimate conflict resolution function of the courts. (Is Repossession Accomplished by the Use of Stealth, Trickery, or Fraud a Breach of the Peace Under Uniform Commercial Code §9-503? 40 Ohio St. L.J. 501, 504. See, also, the recent discussion by the Ohio Supreme Court in *Peebles* v. *Clement* [1980], 63 Ohio St. 2d 314, 317, regarding prejudgment attachments without judicial process.) However, most courts have recognized that a secured party's right to repossess, under controlled circumstances, was a common law right and that the adoption of Uniform Commercial Code 9-503 (R. C. 1309.46) did not change the existing right, but it merely codified the right previously existing under the common law. See *Adams* v. *Southern Calif. First Nat'l Bank* (C.A. 9, 1973), 492 F. 2d 324, *certiorari* denied 419 U. S. 1006 (1974).

The agreement, in the case at bar, granted to the defendant the right to "peaceably enter upon any premises where the property may be found." (See Finding of Fact No. 1). Assuming for purposes of argument that the contracting parties can alter the provisions of R. C. 1309.46 by agreement,[4] the agreement referring to "peaceably" must be read in *pari materia* with the applicable provisions of R. C. Chapter 1309 which are not in conflict therewith. (R. C. 1309.02).

R. C. 1309.46 provides:

"Unless otherwise agreed a secured party has on default the right to take possession of the collateral. In taking possession a secured party may proceed without judicial process if this can be done without breach of the peace or may proceed by action. If the security agreement so provides, the secured party may require the debtor to assemble the collateral and make it available to the secured party which is reasonably con-

---

[4] Because of the nature of the contract provision, the court does not have to reach a decision on this question. However, it is probable that a contract entered into by a consumer and a retail establishment, which authorized a repossession that constituted a breach of the peace, would violate public policy and would be unconscionable and unenforceable. See R. C. 1302.15, 1345.03 and *Hileman* v. *Harter Bank & Trust Co.* (1962), 174 Ohio St. 95.

venient to both parties. Without removal a secured party may render equipment unusable, and may dispose of collateral on the debtor's premises under section 1309.47 of the Revised Code."

This court finds that the word "peaceably", as set forth in the agreement, means "without a breach of the peace" as provided in R. C. 1309.46. "Breach of the peace" has many definitions but this court believes that the most appropriate definition is found in 2 Anderson, Wharton's Criminal Law and Procedure, Section 802 (1957), and cited in 40 Ohio St. L. J. 501, 502, Is Repossession Accomplished By the Use of Stealth, Trickery, or Fraud a Breach of the Peace Under U.C.C. §9-503? (1979) as follows:

"***a violation of public order, a distrubance of the public tranquility, by an act or conduct inciting to violence or tending to provoke or excite others to breach the peace***. It includes any violation of any law enacted to preserve peace and good order."

Citing several applicable cases which this court has read and approves, 40 Ohio St. L. J., at page 503, further states:

"All jurisdictions forbid the use of actual force in effecting a repossession. Thus, an actual striking of a person or breaking of property is forbidden. An entry into a debtor's home may be found to be the use of actual force. Some courts have found a creditor's simple entry into the debtor's home for the purpose of repossession to be a breach of the peace, and most jurisdictions hold a breaking and entering to be a breach. These decisions seek to protect the property interests of the debtor and protect the sanctity of the debtor's home by discouraging acts likely to lead to retaliatory violence."

In *Morris* v. *First Nat'l Bank, supra,* the Ohio Supreme Court defined a breach of the peace in situations where the initial entry into a creditor's premises is lawful, as follows:

"4. Breach of the peace, as that term is used in Section 1309.46, Revised Code, includes an act which is likely to produce violence, which reasonably tends to provoke or excite others to break the peace and which is not performed under judicial process.

"5. Where a creditor legally enters upon the private premises of his debtor for the purpose of repossessing collateral security kept thereon and is (1) physically confronted

by one in charge of such premises, (2) told to desist his efforts at repossession, and (3) instructed to depart from the premises, the refusal by the creditor to heed such commands constitutes a breach of the peace within the meaning of Section 1309.46, Revised Code, and such creditor thereafter stands as would any other person who unlawfully refuses to depart from the land of another."

In *Morris, supra,* at page 29, the Supreme Court gave a further definition of a "breach of the peace":

"In general terms, a breach of the peace is a violation of public order, a distrubance of the public tranquility * * * and is sometimes said, it includes any violation of any law enacted to preserve peace and good order."[5]

In the case at bar, representatives of the defendant, acting within the scope of their employment, broke into the plaintiff's locked apartment, without express or implied consent to do so, and took her television set. The actions of the representatives of the defendant amounted to criminal acts under R. C. 2911.13 (breaking and entering); R. C. 2911.21 (criminal trespass); R. C. 2913.02 (theft); and R. C. 2913.04 (unauthorized use of property). The two representatives acted with the express or implied[6] authority of the defendant in conducting the unlawful entry into the plaintiff's apartment, and the defendant is liable for the tortious misconduct of its agents. *Columbus Railway Power and Light Co.* v. *Harrison* (1924), 109 Ohio St. 526; and *Levin* v. *Nielsen* (1973), 37 Ohio App. 2d 29.

Thus, this court finds that the defendant's actions on July 31, 1979, in repossessing the plaintiff's television amounted to a breach of the peace and such activity constituted a trespass.[7]

---

[5] The Supreme Court further stated in *Morris, supra* (in *dicta*), at page 30:

"While it is not involved in the case at bar, the parties agreed in oral argument that sound public policy should also dictate that a repossessor, proceeding without judicial process, should not enter or attempt to enter any private structure without the express consent of the person in charge thereof. We view the conclusion of the parties in that respect with favor."

[6] The court has previously held that the defendant failed to instruct its employees regarding entry into locked residences and, being negligent in this regard, did know, or should have known that illegal activity was taking place in furtherance of its business.

[7] Whether such activity amounted to an invasion of privacy has not been decided in the state of Ohio, but is discussed in Annotation, Uninvited Entry into Another's

A trespass is "some physical invasion of, or unlawful entry upon, real property, whereby the damages ensuing are direct and not consequential, the essential idea being the breaking of a close by force. Defined in terms of the person who commits the act, a trespasser on land is one who, having no title to or right to possession of the land, makes entry thereon without consent, permission, or license, or who unauthorizedly goes upon the private premises of another without invitation or inducement, express or implied***." 52 Ohio Jurisprudence 2d, 437-438, Trespass, Section 2.

It is not a defense that the defendant had a contract which provided for peaceable entry or that the defendant may have believed that the entry was proper. (*Hileman* v. *Harter Bank & Trust Co.* [1962], 174 Ohio St. 95). In *Hileman, supra,* a local bank held a security interest in the plaintiff's washing machine. The contract provided that the defendant could forcibly enter the plaintiff's premises for purposes of repossessing the machine if the plaintiff defaulted. Upon default, and without notice to the plaintiff, representatives of the defendant bank forcibly entered the plaintiff's premises to repossess the washing machine. At page 97 of *Hileman,* the court stated:

"Next morning, in Hileman's absence, the bank's employees removed a screen and entered Hileman's dwelling through a window and unlocked the door from the inside.

"While they were there, Hileman returned home and with a gun in hand ordered them to leave, which they did. Later the washer was returned to the bank.

"These acts of the bank's employees, if not consented to, would have constituted the offense of breaking and entering. Even with prior consent, they are such acts as are likely to provoke violence and to provoke or incite others to break the peace***.

"The insertion on a mortgage of a clause whereby a mortgagor purportedly consents in advance to a breaking and entering is an attempt to confer upon a mortgagee an extraordinary privilege not enjoyed by an absolute owner and not needed for the reasonable protection of the mortgagee's investment. The existence of the privilege is a threat to the

---

Living Quarters as Invasion of Privacy, 56 A.L.R. 3d 434. Considering this court's findings and conclusions, the court does not have to decide this question.

peace and contrary to public policy. A contractual provision purporting to authorize a breaking is, therefore, void."

The Supreme Court ultimately held that the facts were sufficient to sustain an action for trespass against the defendant bank.

II. The improper repossession of plaintiff's television amounted to a conversion for which the defendant is liable.

A. The defendant failed to comply with the applicable provisions of the Revised Code regarding repossession of plaintiff's television (R. C. 1309.48 and 1317.12) and such action amounted to a conversion of the television.

Under Ohio law, actions taken by a creditor in repossessing a consumer good, after the goods have been *lawfully* seized, constitute a conversion of such goods, *ab initio*.

R. C. 1309.48(A) provides in part as follows:

"If the debtor has paid sixty per cent of the cash price in the case of a purchase money security interest in consumer goods***and [the debtor] has not signed after default a statement renouncing or modifying his rights under sections 1309.44 to 1309.50 of the Revised Code, a secured party who has taken possession of collateral must dispose of it under section 1309.47 of the Revised Code and if he fails to do so within ninety days after he takes possession the debtor at his option may recover in conversion***."

The consumer transaction which is the subject of the case at bar falls within the provisions of R. C. 1309.48(A). The plaintiff was a debtor, R. C. 1309.01(A)(4); she has paid in excess of 60 percent of the cash price (See Finding of Fact No. 3); the transaction was a purchase money security interest (R. C. 1309.05); the television was a consumer good (R. C. 1309.07[A] ); the plaintiff did not renounce her rights subsequent to default (See Finding of Fact No. 4); and the defendant did not comply with the provisions of R. C. 1309.47 (See Finding of Fact No. 9).[8] Thus, the defendant is liable to plaintiff, in conversion, for its failure to proceed according to the provisions of R. C. 1309.47.

In addition to non-compliance with the provisions of R. C. Chapter 1309, the defendant failed to comply with the provisions of R. C. 1317.12 relating to the disposition of collateral taken as a result of a default in a retail installment sales con-

[8] See also R. C. 1309.02(A)(1) and (B) which provide that R. C. 1309.01 to 1309.50 are applicable to this transaction, including leases.

tract. The court has found that the plaintiff was not exempt from a lawful repossession pursuant to the provisions of R. C. 1317.12[9]; however, absent a showing of compliance with R. C. 1317.12, the defendant cannot recover the costs of repossession and is not entitled to a deficiency judgment.[10]

B. The improper entry by defendant into plaintiff's apartment, and the subsequent taking of her television amounted to a conversion of the television.

Prosser defines a conversion as "an act of wilful interference with a chattel, done without lawful justification, by which any person entitled thereto is deprived of use and possession." Prosser, Law of Torts (2 Ed. 1955), 66. In addition, 18 Ohio Jurisprudence 3d, Conversion and Replevin, Section 15 states at page 492:

"A wrongful taking of the property of another is a conversion.***Thus, a seizure of property by a creditor and its removal to his premises without the permission of the owner, and assertion of the right to retain possession until his claim is satisfied and to sell the property if it is not satisfied, is a conversion."

(See, also, Annotation, 35 A.L.R. 3d 1016, and Annotation, 54 A.L.R. 2d 1361.)

The court has previously held that the defendant's entry into plaintiff's apartment was unlawful; that the defendant took plaintiff's television; and thereafter failed to return the television to the plaintiff. This action amounted to a conversion of the television for which the defendant is liable.

III. Damages

A. Defendant is liable to the plaintiff for the compensatory damages sustained by the plaintiff as a result of the defendant's trespass upon her property.

The court has reviewed the evidence carefully and finds that the plaintiff has suffered only nominal damages as a result of defendant's trespass upon her property. Plaintiff seeks damages for her mental anguish caused as a result of the trespass; but, such damages would be too speculative and cannot be awarded by this court in the absence of personal injury. *Columbus Finance, Inc.* v. *Howard* (1975), 42 Ohio St. 2d 178;

---

[9] The maximum time balance as of July 31, 1979 was 25 percent or more.

[10] Based upon defendant's failure to comply with R. C. 1317.12, the counterclaim for the costs of repossession and the deficiency is dismissed.

*Bartow* v. *Smith* (1948), 149 Ohio St. 301; see, also, Annotation, 83 A.L.R. 3d 587.

Thus, the court awards $10 in damages for the unlawful entry into plaintiff's apartment.

B. Defendant is liable to the plaintiff for compensatory damages sustained by the plaintiff as a result of the conversion of the television.[11]

It has been stipulated that the plaintiff paid to the defendant $686 on the "Rental Agreement with Option to Purchase." (See Finding of Fact No. 2). The court was not presented with specific evidence regarding the fair market value of the television set as of July 31, 1979; however, the court has determined that, since the plaintiff paid $686 on the television set and owed $250.60 on the set as of July 31, 1979 (See Finding of Fact No. 3), the fair market value of the television at the time of the conversion was $936.60.

"For a conversion, the measure of damages is the full value of the property; in effect, the defendant is compelled to buy it at a forced sale." Prosser, *supra,* at page 67. See, also, 18 Ohio Jurisprudence 3d, Conversion and Replevin, Section 54.

The court has held that the defendant has no right to seek recovery for the delinquent amount owing the defendant. (Conclusion of Law No. II[A]). Even though this finding has been made, the court feels that the plaintiff cannot recover, as compensatory damages, more than her actual loss and, thus, the court will apply the rule that:

"[T]he measure of damages in an action for conversion by a mortgagor against the mortgagee for an unlawful seizure or sale of the mortgaged property is, ordinarily, in the absence of proof of special damages, the value of the property at the time it was taken less the amount of the mortgage debt.***" 18 Ohio Jurisprudence 3d 531, Section 60.

Thus, finding the value of the television on July 31, 1979 to be $936.60, and the amount of the indebtedness to the defendant at such time to be $250.60, the court finds compensatory

---

[11] Plaintiff has not sought damages in the way of attorney's fees which are clearly allowable in cases where punitive damages are awarded. *Roberts* v. *Mason* (1859), 10 Ohio St. 277; *Stevenson* v. *Morris* (1873), 37 Ohio St. 10; *Columbus Finance* v. *Howard* (1975), 42 Ohio St. 2d 178. Without a request and evidence in support thereof, the court will not make an award of such damages.

damages resulting from the conversion of the television set to be $686.

C. Defendant is liable to plaintiff for punitive damages resulting from the trespass into her apartment and the conversion of her property.

Punitive damages can be awarded by the court in cases where the acts complained of were wanton or otherwise aggravated. (18 Ohio Jurisprudence 3d 532, Section 61.) Actual malice is generally needed before an award of punitive damages can be granted. (*Columbus Finance* v. *Howard, supra,* 42 Ohio St. 2d 178.) However, "actual malice may be inferred from conduct and surrounding circumstances***but there must be evidence from which such malice can reasonably be inferred to justify punitive in addition to compensatory damages." *Davis* v. *Tunison* (1959), 168 Ohio St. 471, paragraph two of the syllabus. See, also, *Gearhart* v. *Angeloff* (1969), 17 Ohio App. 2d 143.

In the case of *M. J. Rose Co.* v. *Lowery* (1929), 33 Ohio App. 488, the court found that a mortgagee unlawfully entered into a mortgagor's premises for purposes of repossessing furniture. In addition to awarding compensatory damages, the court held that the activities of the defendant were such as to amount to malice and that the plaintiff was entitled to punitive damages and attorney's fees for the tortious activity.

In actions for trespass, punitive damages can be awarded if there are actual damages and, by the greater weight of authority, an award of nominal damages is sufficient actual damages upon which to attach punitive damages. 16 Ohio Jurisprudence 2d Rev., Damages, Sections 153, 155; and dicta in *Richard* v. *Hunter* (1949), 151 Ohio St. 185. Since the court has found compensatory damages resulting from the conversion, and, further, found that the trespass and the conversion were acts that occurred as a result of the same or similar activities and intent of the agents of the defendants, attaching punitive damages to the trespass separate from the conversion will not, and cannot, be done. The punitive damages awarded will result from the total conduct which includes the trespass and the conversion. Thus, the question of whether punitive damages can be attached to nominal damages is moot.

The amount of punitive damages to be awarded by the

trier of fact is within its discretion as long as such verdict is not based upon passion and prejudice. See *Roberts* v. *Mason, supra;* 16 Ohio Jurisprudence 2d Rev., Damages, Sections 153 *et seq.; Saberton* v. *Greenwald* (1946), 146 Ohio St. 414; *Columbus Railway, Power & Light Co.* v. *Harrison* (1924), 109 Ohio St. 526; *M. J. Rose Co., supra;* and *Levin* v. *Nielsen, supra,* 37 Ohio App. 2d 29.

The court has no passion toward the plaintiff nor has it any prejudice toward this defendant. However, when a corporation takes to the streets and engages in activity which could amount to a felony under Ohio law to repossess a $900 plus television set, the court is shocked. The court system in Ohio is well equipped to handle consumer credit problems without the necessity of retail merchants taking the law into their own hands to effect illegal self-help repossession. The purpose of punitive damages is to deter future malicious activity and to punish wrongdoers for their past activities.

"Punitive damages are awarded for the purpose of inflicting punishment for wrongdoing, and as an example and deterrent to similar conduct***. The amount to be awarded lies wholly within the sound discretion of the jury and a court will not interfere with the jury's assessment of punitive damages unless there is an abuse of discretion***. Ordinarily abuse of discretion in this reference means so out of all proper proportion to the factors involved as to reveal improper motives or a clear absence of the honest exercise of judgment***. There is no fixed relation between the amount of actual damages and the amount of punitive damages that may be awarded,***and no fixed standard by which they can be measured,***but generally, punitive damages must bear some relation to the injury inflicted and the cause thereof. The jury should take into consideration the attendant circumstances,***including the mitigating and aggravating circumstances.***The defendant's worth or financial condition***is a consideration." *Beggs* v. *Universal C.I.T. Credit Corp.* (1966), 409 S.W. 2d 719, 724, 35 A.L.R. 3d 1007, 1013-1014. See, also, *Roberts* v. *Mason, supra,* and 16 Ohio Jurisprudence 2d Rev., Damages, Section 153.

In the *Beggs* case, *supra,* the Missouri Supreme Court determined that an award of actual damages in the amount of $1,800 and punitive damages in the amount of $7,500 was

proper in a case involving an unlawful repossession of an automobile. In the case at bar, this court has determined that actual damages are $696 and sets punitive damages in the amount of $4,000.

It is the hope of this court that this decision, with its resulting judgment, will instill in the defendant that the sanctity of one's home is revered under our democratic and constitutional form of government. This court has no equity powers, but it is suggested that the defendant engage in a significant amount of training for its employees to apprise them of the repossession provisions of the Ohio Revised Code and the right of debtors not to have their homes invaded for the purpose of repossession.

IV. Plaintiff is liable to defendant for reasonable attorney's fees in connection with her failure to comply with defendant's requests for discovery.

At trial, the court heard evidence regarding plaintiff's failure to answer a set of six interrogatories served upon her on November 15, 1979. Not until June 17, 1980, after defendant sought a motion for sanctions, did the plaintiff comply with the request. The court finds that the refusal to answer the interrogatories was unreasonable and that sanctions should be imposed upon the plaintiff pursuant to Civil Rule 37. Thus, based upon the evidence and the affidavit submitted by defendant's counsel (as per stipulation), the court awards to defendant the amount of $142.50 as expenses incurred in effecting discovery.

V. Conclusion.

Based upon this court's Findings of Fact and Conclusions of Law, judgment will be entered in favor of the plaintiff for $696 actual damages, and $4,000 punitive damages. Defendant's counterclaim will be dismissed.

Judgment will be entered in favor of defendant in the amount of $142.50 as attorney's fees for failure to respond to the interrogatories.

*Judgment accordingly.*