OPINION OF THE COURT
Edward M. Horey, J.
By a motion brought under the provisions of CPLR article 71 the plaintiff seeks an order directing the defendant to return a certain “truck tractor” taken from the plaintiff by the defendant. The defendant contests the motion on the grounds that the retaking was authorized under the provisions of UCC 9-503 and 9-504.
The agreement in issue is termed a “Lease Purchase Agreement.” It consists of a single paragraph of 21 typewritten lines. It is not completed on any printed or statutory form and appears to have been “home drafted.”
Under its terms the agreement provides that the plaintiff as a “lessee” will have possession of a certain “1974 GMC Astro” truck tractor. The plaintiff lessee was obligated to pay $460 per month for a period of 15 months. Upon receipt of final payment the lessor agreed to sell the tractor truck to the plaintiff lessee *478 for the sum of $6. Other obligations of the lessee, later to be reviewed, concerning payment of taxes and tolls, maintenance of liability insurance and maintenance of the vehicle were tersely set forth.
It is of the utmost significance that the agreement was completely silent on the issue of repossession.
After payment by the lessee of nine monthly installments of $460 each without default, the lessor seized the vehicle in question without prior notice and without any attending judicial process. It was agreed upon argument that the seizure was accomplished by the lessor when the vehicle had been temporarily parked by the lessee on the land of a third party with the keys left in the vehicle.
The defendant lessor now asserts in defense of his action a violation of conditions other than nonpayment as the reason for his retaking. The validity of the repossession as asserted by the defendant is limited solely and exclusively to the provisions of UCC 9-503 and the inclusion by necessary reference in that provision of UCC 9-504.
UCC 9-503 provides in relevant part: “Unless otherwise agreed a secured party has on default the right to take possession of the collateral” (emphasis added). It concludes with the provision that after retaking the secured party “may dispose of collateral on the debtor’s premises under section 9-504.”
Whether or not the agreement in question falls within the provisions of the Uniform Commercial Code is our first inquiry. UCC 1-201 (37) states in relevant part as follows: “Whether a lease is intended as security is to be determined by the facts of each case; however, (a) the inclusion of an option to purchase does not of itself make the lease one intended for security, and (b) an agreement that upon compliance with the terms of the lease the lessee shall become or has the option to become the owner of the property for no additional consideration or for a nominal consideration does make the lease one intended for security.” (Emphasis added.)
The required payment of only $6 following the payment of 15 months of rental of $460 per month is certainly a nominal consideration for the passage of title. Clearly, the lease agreement in issue was one made for security. (UCC 1-201 [37].) As such, it is a security agreement within the meaning of the UCC. {See, UCC 9-501, in particular annotations thereto McKinney’s Cons Laws of NY, Book 62V2, UCC 9-501, p 596.)
*479 Are the procedures authorized under the security agreement in issue violative of the due process clause of the New York State Constitution is our second inquiry.
In Sharrock v Dell Buick-Cadillac (45 NY2d 152), our Court of Appeals held that fundamental notions of procedural due process require that before the State may deprive a person of a significant property interest in aid of a creditor, that person must be given notice and an opportunity to be heard.
In reaching this determination our Court of Appeals contrasted the due process clause of the Federal Constitution and the due process clause in the Constitution of the State of New York and noted that “[conspicuously absent from the State Constitution is any language requiring State action before an individual may find refuge in its protections.” (Sharrock v Dell Buick-Cadillac, supra, p 160.) The absence of such express language, however, was held not to eliminate the necessity of State involvement but did “provide * * * a basis to apply a more flexible State involvement requirement than is currently being imposed by the Supreme Court with respect to the Federal provision.” (45 NY2d 152, 160.)
Factors stated to be included in a determination of State involvement were “the source of authority for the private action; whether the State is so entwined with the regulation of the private conduct as to constitute State activity; whether there is meaningful State participation in the activity; and whether there has been a delegation of what has traditionally been a State function to a private person”. (Sharrock v Dell Buick-Cadillac, 45 NY2d 152, 158, supra.)
Considering the application of the stated factors to the case at bar — note is first made that the private action complained of is the repossession by the defendant without prior demand, and without consent and without judicial process to determine whether the plaintiff had ever defaulted. The repossession was not only done but done with silence and stealth of a truck tractor which the defendant had voluntarily delivered into the possession of the plaintiff under the terms of a contract which contained no contractual provision whatsoever for repossession. The continued holding of the vehicle is done with asserted statutory right not only to effect a sale thereof without further judicial process but also to sue for a deficiency if the sale proves inadequate.
The sole bases of the defendant’s conduct are the provisions of UCC 9-503 and 9-504. Certainly as enactments made by the Legislature of the State of New York and approved by the *480 Governor, they constitute State action. Providing as it does that the only restriction on repossession is that it be without a “breach of the peace”, UCC 9-503 authorizes the commission of a common-law trespass, action which was not permitted at common law to regain possession of personal property. (See, Prosser, Torts § 22, at 120-121 [4th ed]; Fox v First Bank, 8 Conn L Trib No. 6 [Sup Ct 1982], affd, on reh 8 Conn L Trib No. 19 [1982]; see also, Shirley v State Natl. Bank, 493 F2d 739, 746 [dissent, Kaufman, Ch. J.].) The repossession in issue was accomplished by a delegation of the sovereign process of the State of New York to an individual. That delegation together with all of the rights provided the plaintiff under UCC 9-503 and 9-504 constitutes a transfer of “ The traditional roles of judge, jury and sheriff * * * without providing for any judicial supervision or other safeguards’ ”. (Sharrock v Dell Buick-Cadillac, 45 NY2d, at p 163, citing Cox Bakeries v Timm Moving & Stor., 554 F2d 356, 358.) As will be developed more fully in this decision, the enactment of UCC 9-503 and 9-504 by the State of New York particularly the included rights in this statute of sale and the right to obtain a deficiency judgment are a vast extension of creditors’ rights beyond those known to the common law.
This court holds that as applied to the case at bar the delegation of authority and the procedures authorized under UCC 9-503 and 9-504 are unconstitutional as a violation of the due process clause of NY Constitution, article I, § 6. The holding made is supported by the decisions and rationale of the following cases: Sharrock v Dell Buick-Cadillac (45 NY2d 152, supra); Svendsen v Smith’s Moving & Trucking Co. (76 AD2d 504, affd 54 NY2d 865, cert denied 455 US 927); Fox v First Bank (8 Conn L Trib No. 6 [Sup Ct 1982], affd on reh 8 Conn L Trib No. 19 [1982], supra).
Compare Gallets v General Motors Acceptance Corp. (96 AD2d 756), construing provisions of Motor Vehicle Retail Instalment Sales Act (Personal Property Law §§ 301-315) and General Business Law, two entirely different security statutes and construed under a wholly different factual situation.
Crouse v First Trust Union Bank (86 AD2d 978 [4th Dept 1982], revg 109 Misc 2d 89, appeal withdrawn 56 NY2d 1034) is not contrary to the decision reached here. There, it was held that UCC 9-503 and 9-504 which gave the secured party the right to retake and dispose of collateral without judicial process were constitutional under the New York Constitution for the reason that the security device there employed was “equivalent to a chattel mortgage.” The court then explained the significance of *481 this feature as follows: “At common law, a chattel mortgagee had the right, upon default, to take [relpossession of the chattel and thenceforth treat it as his own and to sell it if he chose (1 Jones, Chattel Mortgages and Conditional Sales [Bowers ed], § 1; Blake v Corbett, 120 NY 327, 330-331; Briggs v Oliver, 68 NY 336, 339). The statute involved here, unlike that in Sharrock, does nothing more than merely acknowledge previous lawful conduct (Sharrock v Dell Buick-Cadillac, supra, at p 161) and hence its enactment did not constitute [a] significant State action or involvement.” (86 AD2d 978, supra.)
In the instant case we are dealing with an instrument which clearly was not a chattel mortgage nor the equivalent of one. As Dean Bogert noted succinctly and accurately both historically and currently “[t]he chattel mortgage involves three steps, — a delivery of possession, a transfer of title to the buyer, and a transfer of title back to the seller for security”. (Bogert, The Evolution of Conditional Sales Law in New York, 8 Cornell LQ 303,304-305, and cases cited.) To the same effect see Void, Sales (at 310) which states: “In a chattel mortgage, the mortgagee’s security in trust is conveyed to him by the mortgagor; in a conditional sale the conditional seller’s security in trust is reserved in himself, while he conveys to the buyer the beneficial ownership in the goods.”
Under the agreement in issue the essential element of initial transfer of title to the plaintiff with transfer back to the defendant for security was wholly lacking. Title was reserved in the defendant until all lease payments were made by the plaintiff and a further payment, albeit nominal, concluded the matter. The conclusion is inescapable: such features eliminate the instrument in issue for classification as a chattel mortgage.
Might not the agreement in issue be construed as a conditional sale or the equivalent of a conditional sale under the common law? The answer to that question is a decided “no.”
While it is true that in the development of the law of conditional sales in America there can be found some decisional law wherein some courts by construction held leases with options to purchase the goods for no or a merely nominal consideration at the expiration of the stipulated rental period to be, in substance, conditional sales (see, Void, Sales, at 313, and cases there cited) such cases on analysis were based upon analogy to statutory or decisional law developed in the United States concerning conditional sales. These decisions were not based upon any precept of common law.
*482 While a conditional sale appears to have been known to the common law, it was quite different from what our law knows as a conditional sale. “The conditional vendor at common law * * * was put to [an] election: he could either sue his debt to judgment or he could repossess his security, but he could not do both. If he sued on the debt, he lost his security and became a general creditor; if he repossessed the goods, he lost his deficiency claim.” (Gilmore & Axelrod, Chattel Security, 57 Yale LJ 517, 542-543.)
The right to repossession under the common-law conditional sale contract was by virtue of a contract provision providing for it. If the contract so provided it would be enforced under the common law, but only the right to repossession would be enforced. When attempts were made to add other provisions to the provisions for repossession, typical of which was the right to sue for a deficiency, “[t]he judges, who knew their common law, were at first not amenable: [when] conditional sale contracts stipulated both for repossession and a deficiency claim, they might be found to be chattel mortgages on masquerade, or the offending clause might be disregarded as repugnant to the essence of the bargain.” (Gilmore & Axelrod, Chattel Security, 57 Yale U 517, 543.)
That the common-law requirement that the right of repossession under a conditional sale was under an express contract provision was carried over in the early days of American jurisprudence, to be later modified to be permitted by implication by virtue of the retained ownership in the seller and finally to be dependent upon statutory enactment (see, Void, Sales, at 286-287, and cases cited).
The point made is this: the instrument in issue devoid of any contractual provision providing for repossession would not have been treated or considered a conditional sale under the common law. Entitled generally a “security agreement” its origin is in the Uniform Commercial Code of this State. As noted in the statutory commentary, the over-all scheme of which is “one that provides for rights on default depending upon the type of collateral involved, rather than a distinct set of [enforced] rules for each security device * * *
“[t]he Code subjects realization on all security interests to statutory control even though other remedies by agreement are permitted.” (See, Annotations, McKinney’s Cons Laws of NY, Book 621/2, UCC 9-501, p 596; emphasis added.)
As Professor Bogert, Dean of the Cornell Law School and draftsman of the old Uniform Conditional Sales Act, the prede *483 cessor in part to the UCC, observed, the employment of a conditional sale as a credit device was of comparatively recent origin in this State. (See, The Evolution of Conditional Sales Law in New York, 8 Cornell LQ 303, 310.)
Thus, in the case at bar, we are not dealing as in Crouse v First Trust Union Bank (86 AD2d 978, supra), with new wine in old bottles. Presented here is a security agreement which has no historical trappings under the common law.
It is a separate legal entity dependent insofar as rights of repossession and sale completely upon State action by virtue of statutory enactment. (See, UCC 1-201 [37]; 9-503, 9-504.)
The instant case provides a classic example of the need of a judicial hearing before summary repossession is authorized. Here, the lessee plaintiff agreed to make certain payments after the delivery of the “truck tractor.” It is conceded that the lessee has made all required payments and was never in default in so doing.
The agreement also provided that the lessee would pay taxes, toll, license fees and liens occurring from the operation of the vehicle. The defendant lessor in his answering affidavit alleged that the purchaser had not paid certain Pennsylvania highway use taxes. Upon argument of the motion, however, it was conceded that such deficient taxes had been paid, and without any damage to the defendant lessor.
Finally, the defendant lessor urged in his affidavit that the plaintiff lessee had maintained the vehicle in an unsafe condition and that this could impose risk of loss on the lessor defendant. The only contract provision relating to this charge was one that provided that the plaintiff lessee would maintain and repair said vehicle “as it is necessary in the operation of the vehicle.” Without specificity of the alleged deficiencies and without proof of whether repairs were necessary to the operation of the vehicle, the defendant lessor asserts statutory rights of repossession and sale.
It is upon the enumerated charges that the defendant lessor alleges the plaintiff lessee to be “in default.” Regrettably it appears that the term “default” is not defined in the Uniform Commercial Code. It is said that “this is one of the standards * * * determined by the parties contractually by the terms of the security agreement. While many contingencies may be included as a basis for default, they are not automatically included, and, absent a specific inclusion in the security agreement, the court will give to the abstract term ‘default’ only the generally ac *484 cepted meaning of failing to perform or pay”. (79 CJS [Supp], Secured Transactions, § 98, at 114.)
The instant agreement is bare and void of any provision defining “default.” The charges of breach of agreement alleged deal as much or more with the obligations of the lessee plaintiff to third parties as to the defendant lessor. Absent a hearing to determine the factual issues, and their impact upon the defendant, no intelligent decision can be made of the right to repossession and sale. That issue should have been decided by judicial process before repossession was undertaken. It wasn’t decided because UCC 9-503 did not provide for it. That was wrong.
This court cannot and does not believe that the Constitution of this State or the provisions of UCC 9-503 and 9-504 properly construed permit a secured party to make a subjective determination of default under the provisions of a security agreement of the type here involved and then by delegation of sovereign authority give the party making such determination the right to repossess and sell and seek a deficiency judgment, all without providing the nonsecured party judicial process to stop such peremptory action before the damage is done. The very touchstone of procedural due process is that there be provided an opportunity to be heard at a “meaningful time and in a meaningful manner.” (Armstrong v Manzo, 380 US 545, 552 [1965].) The plaintiff lessee here has been without the use of his vehicle for months.
It is noted that in the instant case the same result that did occur could have occurred if the defendant, lessor under the contractual provision for maintenance of the vehicle, asserted that he was subjectively outraged by the failure of the lessee to clean the windshield on the truck tractor or wash the mud from its cab after a rain.
From experience, this court recognizes that an ingenuous or sympathetic appellate review may save the agreement and the defendant’s construction of it from the State constitutional requirements posited in Sharrock v Dell Buick-Cadillac (45 NY2d 152, supra); history and the common law will not. Nor will this court.
This court finds nothing any more sacrosanct about the provisions of UCC 9-503 and 9-504 than the Appellate Division, Second Department, found in section 7-210 of the same code referable to a warehouseman’s lien (See, Svendsen v Smith’s Moving & Trucking Co., 76 AD2d 504, affd 54 NY2d 865, supra), nor more than the Court of Appeals found in Lien Law § 184, referable to a garageman’s lien (see, Sharrock v Dell Buick- *485 Cadillac, 45 NY2d 152, supra). When the issue is fundamental rights of procedural due process or facility of methods in the marketplace, the former must win and the latter lose.
The defendant having proceeded in violation of constitutional rights of procedural due process under the Constitution of the State of New York, decision is for the plaintiff. The motion to require the defendant to return the vehicle is granted for the reasons stated.