**MANUFACTURERS HANOVER LEASING CORPORATION, Plaintiff,**

**v.**

**ACE DRILLING COMPANY, Kenneth G. Adams, Stephen S. Adams, Mark N. Shoup and Gary C. Adams, individually and as Trustee for the Gary Clark**

Adams Trust, the Kimberly Clark Adams Trust, and the Jamey Lea Adams Trust, Defendants.

No. 86 Civ. 9347 (MP).

United States District Court,
S.D. New York.

Dec. 20, 1989.

Simpson, Thacher & Bartlett by Joseph Tringali, New York City, for plaintiff.

Holliman, Langholz, Runnels & Dorwart by David W. Holden and Robert Alan Rush, Tulsa, Okl., for defendant Gary C. Adams.

OPINION

MILTON POLLACK, Senior District Judge.

This is a motion by plaintiff for summary judgment against Ace Drilling Company, Mark Shoup and Gary C. Adams, individually and as Trustee for the Gary Clark Adams Trust, the Kimberly Clark Adams Trust and the Jamey Lea Adams Trust pursuant to Rule 56 Fed.R.Civ.P. All other defendants have settled. For the reasons appearing hereafter, the motion will be granted.

*Background*

On March 31, 1978, Manufacturers Hanover Leasing Corp. and Ace Drilling Co. entered into two agreements: Master Lease Agreement No. 1, for the lease of an oil drilling rig and related equipment with an aggregate cost of $2 million or less; and Master Lease Agreement No. 2, for the lease of an oil drilling rig and related equipment with an aggregate cost of $1.85 million or less. By later supplements, Ace confirmed and accepted delivery of the equipment and agreed to make payments under the leases.

The Master Lease Agreements contained a clause giving Ace the right to purchase the leased equipment at the end of the lease term for $1.

The Master Lease Agreements also contained definitions of "Events of Default," after which MHLC could declare the Agreements to be in default and could elect a remedy. (MLA No. 1, ¶ 11; MLA No. 2, ¶ 11).

Kenneth Adams, Stephen Adams, Mark N. Shoup, and Gary Adams (individually and as trustee for certain trusts) guaranteed the obligations of Ace under these agreements.

Both the Master Leases and the Guaranties contain clauses stating that the agreements will be governed by New York Law.

Because of a recession in the oil industry, Ace ceased operating the leased drilling rig in late 1982, and stopped making payments under the leases in July, 1983. By the close of 1983, the Ace partners had concluded that the drilling rig would not likely return to full operations, the recession might become more severe, and the rig should be sold to avoid further losses. Ace advised MHLC of those conclusions.

In January 1984, Parker Drilling Company offered to purchase the drilling rig for $1.61 million which Ace reoffered to MHLC, in full satisfaction of the outstanding debt due from defendants.[1] MHLC refused to accept the offer on those terms; it had the right to refuse such a proposal.

From 1984 through 1985, MHLC made several attempts to restructure the leases. No agreement among the parties was reached. By letter dated April 17, 1986, MHLC notified Ace that an Event of Default had occurred and that MHLC was accelerating the payments due under the leases. MHLC also sent Demands on Guaranty to the guarantors as required.

MHLC, in 1986, foreclosed the loan under the terms of the leases and duly sold the drilling rig in a foreclosure sale for $125,000, which was at that time the best offer attainable. The parties have agreed that MHLC ultimately disposed of the collateral in a commercially reasonable manner.

MHLC filed suit against Ace Drilling for the deficiency due under the leases and against the guarantors Kenneth Adams, Stephen Adams, Mark N. Shoup, and Gary Adams (individually and as trustee for certain trusts).

MHLC has settled with Kenneth Adams and Stephen Adams.

This court, by a Memorandum dated September 20, 1989, dismissed Gary Adams' challenge to its in personam jurisdiction and denied his request for a transfer of the case to Oklahoma. *Manufacturers Hanover Leasing Corp. v. Ace Drilling Co.*, 720 F.Supp. 48 (S.D.N.Y.1989).

Gary Adams asserts as a defense to the motion for summary judgment that MHLC breached the Uniform Commercial Code or MHLC's duty of good faith by refusing to accept the offer in 1984 of $1.61 million for his obligations under the leases.

### Analysis

The parties agree that this type of lease with a $1 purchase option upon termination makes the lease a security agreement covered by Article 9 of the UCC. U.C.C. § 1–201(37).

Under U.C.C. § 9–504, a secured party, upon default, may sell, lease or otherwise dispose of any or all of the collateral. Any disposition of the collateral, however, must be commercially reasonable. Section 9–504(3) provides:

> Disposition of the collateral may be by public or private proceedings and may be made by way of one or more contracts. Sale or other disposition may be as a unit or in parcels and at any time and place on any terms but every aspect of the disposition including the method, manner, time, place and terms must be commercially reasonable.

The key question is: When did default occur? Before that time, MHLC had only ordinary obligations of good faith with regard to the collateral.

Because "default" is not defined anywhere in the U.C.C., the parties' definition governs the term's meaning. *Honeywell Information Sys., Inc. v. Demographic Sys., Inc.*, 396 F.Supp. 273, 276 (S.D.N.Y. 1975) (The terms of the parties' ... Agreement determine whether defendant was in default of its obligations at any given time.); *Bankers Trust Co. v. J.V. Dowler & Co.*, 47 N.Y.2d 128, 134, 417 N.Y.S.2d 47, 50, 390 N.E.2d 766, 769 (1979) ("The Uniform Commercial Code contains no definition of default ... the agreement is controlling for this litigation."); 9 R. Anderson, Uniform Commercial Code

---

1. The offer for the rig was almost $1 million short of the outstanding indebtedness due from defendants.

§ 9–501:10 (1985) ("What constitutes default is to be determined by the obligation imposed by the security agreement."); 1 P. Coogan, W. Hogan & D. Vagts, Secured Transactions Under the Uniform Commercial Code § 1.02[4]; § 8.02[1] (1989) ("The security agreement itself determines the circumstances under which the secured creditor can declare a default against its debtor ...; For the most part, the security agreement itself must define the standards for determining when a default occurs."). Cf. *Jefferds v. Ellis*, 127 Misc.2d 477, 483–84, 486 N.Y.S.2d 649, 655 (1985) (absent a specific definition, the court interprets "default" to mean only a failure to pay).

As set out in ¶ 11 of both Master Lease Agreements, failure to pay any rent or other payment due is one of the Events of Default. However, the Agreements give MHLC the *option* to declare the Agreements in default, upon the occurrence of any one of the stipulated Events. MHLC did not exercise its option until April 17, 1986, so the Agreements were not in default until that date. *In re Martin Specialty Vehicles, Inc.*, 87 B.R. 752, 764 (D.Mass.1988) (The bank had not exercised its option to declare the debtor in default by a certain date, so no default existed on that date.).

For these reasons, MHLC's obligation under the U.C.C. to dispose of the collateral in a commercially reasonable manner did not arise until April 17, 1986.

■ Nor did MHLC breach any duty of good faith, express or implied, by refusing to sell the rig to Parker Drilling.

Under New York law, an implied obligation of good faith "is in aid and furtherance of other terms of the agreement of the parties. No obligation can be implied, however, which would be inconsistent with other terms of the contractual relationship...." *Sabetay v. Sterling Drug, Inc.*, 69 N.Y.2d 329, 335, 514 N.Y.S.2d 209, 212, 506 N.E.2d 919, 922 (1987). The Master Lease Agreements contain provisions for the early termination of the lease. (MLA No. 1 ¶¶ 2 and 6, and Rider A., ¶ 20; MLA No. 2 ¶¶ 2 and 6, and Rider A., ¶ 21). Because the defendants proposed that MHLC accept the Parker Drilling offer in full satisfaction of all claims, MHLC was not under a good faith obligation to accept the offer and had a right to stand on the provisions of its lease agreements.

*Conclusion*

U.C.C. § 9–504(3) imposes on a secured party a duty to make a commercially reasonable disposition of the collateral upon default. There is no issue thereon. MHLC did not violate its duty of good faith in refusing to accept the offer of Parker Drilling to purchase the rig. MHLC had a right to stand on the terms of its bargain. Default in this case did not occur until April 17, 1986 when MHLC exercised its right to declare the defendants in default. The plaintiff is entitled to recover the deficiency from the defendants in Court.

The motion for summary judgment is granted and the Clerk is directed to enter judgment in favor of plaintiff, Manufacturers Hanover Leasing Corp., 270 Park Ave., New York, NY for the sum of $4,557,-643.86, together with the contractual per diem rate of $1,532.74 and costs to be taxed by the Clerk against defendants, Mark N. Shoup, Gary C. Adams, individually and as for the Gary Clark Adams Trust, the Kimberly Clark Adams Trust, and the Jamey Lea Adams Trust and Ace Drilling Co., 4500 South Garnett, Suite 800, Tulsa, Oklahoma 74147. Execution may issue forthwith.

So Ordered.