STATE OF NEBRASKA, APPELLEE, V. LLOYD R. TRACKWELL, JR.,
APPELLANT.

458 N.W.2d 181

Filed July 20, 1990.   No. 89-866.

Mark M. Sipple, of Luckey, Sipple, Hansen, Emerson & Schumacher, for appellant.

Robert M. Spire, Attorney General, and Denise E. Frost for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

WHITE, J.

Defendant was convicted of third degree assault after a trial in the county court for Platte County. The district court affirmed the conviction and sentence. Defendant has appealed to this court. We reverse and dismiss.

On November 21, 1988, a complaint was filed against the defendant, Lloyd R. Trackwell, Jr., alleging that he did "intentionally, knowingly, or recklessly cause bodily injury to Lois A. Murcek . . . ." The case was tried to the court. The evidence presented at trial showed the following relevant facts: Defendant owns ACP Collection Agency in Lincoln, Nebraska. Larry Holmes is his employee. On the night of October 14, 1988, defendant and Holmes went to a farm north of Monroe, Nebraska, to repossess a 1988 Ford Ranger pickup owned by Lois Murcek. Murcek lives on the farm with Frank Able. There apparently was some repair work done on the

pickup at a Lincoln garage, and Murcek had defaulted on payments. Defendant testified that an artisan's lien had been filed. Murcek had received notice that she was in default.

After unsuccessfully attempting to obtain assistance from the Platte County sheriff's office, defendant and Holmes drove to the farm together in defendant's vehicle. Defendant drove onto the farmplace and dropped Holmes off near the pickup, which was parked either partially in or near a barn. The pickup box was loaded with personal property belonging to Able and Murcek. Holmes began to drive the pickup down the 50- to 60-foot driveway while defendant waited in his car near the end of the driveway. From this point the facts are in dispute.

Able and Murcek testified to one version of the evening's events. Murcek testified that she was awakened around 11 p.m. by Able shouting to her that the pickup was being stolen. She ran outside and observed that the pickup was beginning to proceed down the driveway toward a county road. In an attempt to stop the pickup, she attached herself to the front of the pickup by grabbing "the grill or the bottom of the bug screen or something." Although the pickup "bumped" her with a series of jerking motions, she remained attached to the pickup, with her feet sliding along the gravel driveway. She testified that a car was parked near the end of the driveway. She further testified that she could hear a voice coming from behind her as she faced the pickup, yelling, " ''Cmon, [sic] Lar! Keeping [sic] coming Lar! . . .' " As the pickup approached the end of the driveway, someone grabbed her from behind, pulling her off the pickup and throwing her to the ground. At trial she identified this man as the defendant. She testified that after throwing her to the ground the defendant returned to his vehicle and drove away. She suffered a deep laceration on two fingers, and various bruises and scratches. It was the State's theory that these injuries were caused by defendant's throwing Murcek from the truck.

Able testified that after he ran outside he attached himself to the driver's side of the pickup by grabbing the rearview mirror. His testimony basically corroborated Murcek's version of the facts. Able also testified that he saw a man near the end of the driveway who was yelling, " 'Cmon, Lar! Take it easy! 'Cmon,

Lar."

Defendant and Holmes recounted a different version of the events. Holmes testified that he never saw anyone leave the house. He testified that he saw Able pounding at the driver's side of the pickup but that he never saw Murcek at all that night. He also testified that defendant did not leave his vehicle and that he did not hear defendant yell words of encouragement.

Defendant testified that he saw Murcek and Able come out of the house. He stated that Able attached himself to the driver's side of the pickup. However, he testified that Murcek attached herself to the rear of the pickup and that "[s]he was draggin' down in back of the — back — she — like a Bugs Bunny cartoon. She was trying to stop the truck and draggin' on the back of it, holding these bunge [sic] straps." He testified that both Able and Murcek dropped off the pickup near the end of the driveway and that he never left his car and never grabbed Murcek. Defendant was not questioned as to whether he yelled encouragement to Holmes. It was defendant's theory that the bungee cords and subsequent fall caused Murcek's injuries.

The trial judge issued a memorandum opinion and relied on a "criminal enterprise" theory to find defendant guilty of third degree assault. The conviction was affirmed by the district court. Defendant appeals to this court, contending, in sum, that his conviction for third degree assault is contrary to fact and law.

This court has stated that the factual findings of a judge who serves as a trier of fact in a criminal case will not be disturbed on appeal unless clearly wrong. *State v. Foster*, 230 Neb. 607, 433 N.W.2d 167 (1988). In the present case there were several different theories upon which the trial court, as fact finder, could have imposed criminal liability. The trial court issued a detailed but sometimes confusing memorandum opinion. The trial court found facts to support one theory of criminal responsibility, to the exclusion of other theories. In this appeal we feel compelled to be bound by the facts as affirmatively determined by the trial court. For this court to determine facts on appeal and apply those facts to some other theory of criminal responsibility would be, in effect, to retry this case on appeal, with the Supreme Court sitting as the fact finder.

In the memorandum opinion the trial judge rejected Able and Murcek's version of the cause of Murcek's injuries and accepted the defendant's version:

> The version of the defendant's, that the victim was hanging onto the back of the pickup, losing control after she had been dragged down the driveway and being thrown to the ground, cutting her hand on the bungy [sic] strap or the rear of the pickup, appears more consistent with the photographs showing her injuries.

It appears in the present case that the State attempted to prove that defendant himself committed a third degree assault on Murcek by grabbing her and throwing her to the ground. The memorandum opinion indicates that the State's theory was squarely rejected by the trial court.

An alternative basis of criminal liability would have been that defendant aided and abetted Holmes in committing the assault upon Murcek. Neb. Rev. Stat. § 28-206 (Reissue 1989) states that "[a] person who aids, abets, procures, or causes another to commit any offense may be prosecuted and punished as if he were the principal offender." See, also, *State v. Marco*, 230 Neb. 355, 432 N.W.2d 1 (1988); *State v. Schreck*, 224 Neb. 650, 399 N.W.2d 830 (1987). Murcek's and Able's testimony that defendant shouted words of encouragement might have been sufficient, if believed, to convict defendant of aiding and abetting the ostensible assault upon Murcek by Holmes. However, the trial court did not find that defendant aided and abetted Holmes by shouting words of encouragement.

Instead, the memorandum opinion is reasonably clear that the trial court based criminal liability solely on a "criminal enterprise" theory. The trial court reasoned that "[t]here was no attempt to unload the personal property and when the election was made to take the pickup with the personal property loaded thereon, [defendant and Holmes] were engaging in the criminal enterprise of theft of personal property." The trial court reasoned that defendant and Holmes knew before they began to move the pickup that the pickup contained personal property. He further reasoned that defendant encouraged or assisted Holmes in taking the pickup, making defendant an aider and

abettor under § 28-206, and therefore both men became equally culpable in the criminal enterprise of theft. It does not appear from the record whether defendant or Holmes was charged with or convicted of theft. The trial court then determined Holmes recklessly injured Murcek and imposed criminal liability upon defendant for Holmes' assault.

In the memorandum opinion the trial court did not find that defendant assisted or encouraged Holmes to assault Murcek either before or after Holmes began to drive the pickup. Without such a finding defendant would only be present at the scene. As we stated in *State v. Sutton*, 231 Neb. 30, 45, 434 N.W.2d 689, 699 (1989): " ' "Mere presence, acquiescence, or silence . . . is not enough . . . to constitute one an accomplice. . . ." ' "

The trial court based accomplice liability solely on the theory that defendant and Holmes were engaged in a "criminal enterprise," and therefore defendant would automatically be liable for any subsequent criminal act committed by Holmes. We do not agree. As the court stated in *Hollingsworth v. State*, 366 So. 2d 326 (Ala. Crim. App. 1978):

The language of some of the cases emphasizing the requirements necessary or sufficient to make one accountable as a principal, who aids or abets another in the commission of a felony, has apparently been taken by some to mean that if one meets all of the requirements of an aider or abettor in the commission of a crime contemplated by the two or more conspirators, he becomes the aider or abettor of the other conspirator or conspirators in the commission of *every* crime committed by him or them in the course of overt action pursuant to the conspiracy. Such misconception should no longer prevail in view of the illuminating treatment of the subject by Judge Bookout in *Howell v. State*, Ala. Cr. App., 339 So.2d 138, 139 (1976), wherein the principle is accurately stated as follows:

" 'Every person engaging in a joint enterprise is not automatically and equally guilty of a crime committed independently by another participant in the venture. A conspiracy necessary to fix guilt on all participants must

be one in which all have a meeting of the minds (though only for an instant) to commit the crime charged. *A different crime independently committed and not a foreseeable consequence of the conspiracy can hardly be charged to one who neither participated in its commission, nor aided therein, although all originally started out on some other illegal venture.'* "

(Latter emphasis supplied.) 366 So. 2d at 332.

The court added that an accomplice is criminally responsible for the proximate, natural, and logical consequences of the common criminal undertaking, and these consequences should be determined from the particular facts of the case. See, also, *State v. Ivy*, 119 Wis. 2d 591, 350 N.W.2d 622 (1984) (one who intentionally aids and abets the commission of a crime may be responsible not only for the intended crime, if it is in fact committed, but also for other crimes which are committed as a natural and probable consequence of the intended criminal act).

In the present case, Holmes' conduct toward Murcek was independent of the ostensible theft. It was not a foreseeable consequence, nor was it a natural and probable consequence, that Murcek, whose presence was unknown to Holmes, would attach herself to the rear of the pickup and allow herself to be dragged the length of the driveway, where she would eventually lose her grip and fall to the ground. On the facts of this case as determined by the trial court, defendant is not criminally responsible as an accomplice for Holmes' acts. We do not decide whether Holmes' acts constitute an assault. The theory upon which the trial court relied to impose criminal liability on defendant is erroneous as a matter of law.

We note here the trial court found that under the self-help repossession provision of the Uniform Commercial Code, Neb. U.C.C. § 9-503 (Reissue 1980), "[a]ny privilege or right to enter upon the private property of another to peaceably retake the property would terminate upon commencement of the criminal enterprise." A mere trespass onto the open land of another, without more, will not usually constitute a breach of the peace under this section. See, *Jefferds v. Ellis*, 127 Misc. 2d 477, 486 N.Y.S.2d 649, 652 (1985), *rev'd on other grounds* 122 A.D.2d

595, 505 N.Y.S.2d 15 (1986) (providing as it does that the only restriction on repossession is that it be without a "breach of the peace," § 9-503 authorizes the commission of a common-law trespass, action which was not permitted at common law to regain possession of personal property); *Marine Midland Bank-Central v. Cote*, 351 So. 2d 750 (Fla. App. 1977) (when a security agreement provides the secured party has on default the rights and remedies provided by the Uniform Commercial Code, the right of repossession stated by Fla. Stat. § 679.503 (1975) implies, just as it did at common law, a limited privilege to enter upon the debtor's land); *Butler v. Ford Motor Credit Co.*, 829 F.2d 568 (5th Cir. 1987) (rejecting the contention that entering a private driveway to repossess a vehicle without the use of force is a breach of the peace because it constitutes a trespass); 2 J. White & R. Summers, Uniform Commercial Code § 27-6 at 577 (3d ed. 1988) ("We have found no case which holds that the repossession of an automobile from a driveway or a public street (absent other circumstances, such as the debtor's objection) itself constitutes a breach of the peace, and many cases uphold such a repossession").

The repossession in the present case, however, was clearly a breach of the peace. Defendant and Holmes went to the farm at 11 p.m.; took the pickup, which was loaded with personal property; and fled despite Able's protest, which was known to Holmes. There was also controverted testimony that the front part of the pickup may have been parked in an outbuilding. For representative cases concerning the facts which may constitute a breach of the peace, see, e.g., *Dixon v. Ford Motor Credit Corp.*, 72 Ill. App. 3d 983, 391 N.E.2d 493 (1979) (when a creditor repossesses in disregard of the debtor's unequivocal oral protest, the repossession may be found to be a breach of the peace); *Nicholson v. Schramm*, 164 Ind. App. 598, 330 N.E.2d 785 (1975) (assault and battery constitutes a breach of the peace); *Kimble v. Universal TV Rental*, 65 Ohio Misc. 17, 417 N.E.2d 597 (1980) (breach of the peace is a violation of public order, a disturbance of the public tranquility, by an act or conduct tending to provoke or excite others to breach the peace, and includes any violation of any law enacted to preserve the peace and good order); *Morris v. First Natl. Bank & Trust Co.*

*of Ravenna*, 21 Ohio St. 2d 25, 254 N.E.2d 683 (1970) (breach of the peace results when creditor legally enters debtor's premises but is physically confronted by one in charge of such premises, told to desist his efforts at repossession, and instructed to depart from the premises, and creditor refuses to heed such commands). The trial court correctly concluded that defendant would be deprived of any defense afforded by § 9-503.

Keeping in mind that though the defendant may have known that personal property not subject to an artisan's lien was in the truck, defendant is charged with assault only. He was not found to himself have committed the assault, to have ordered or encouraged the assault, or to have reasonably contemplated that Holmes would assault the victim.

Under the facts as determined by the trial court, defendant, as a matter of law, is not criminally responsible as an accomplice for Murcek's injuries. Defendant's conviction is reversed, and the cause is dismissed.

REVERSED AND DISMISSED.

BOSLAUGH, J., dissenting.

It seems to me that an injury to a debtor who resists a repossession accomplished by force is a foreseeable consequence of the repossession.

The defendant and his employee Holmes went to the farm for the express purpose of taking possession of the pickup truck and driving it away. Not content to take only the pickup truck, they took the cargo also. When the owners, Murcek and Able, tried to resist the repossession, Holmes continued to drive away, resulting in the injury to Murcek. The defendant was present at the scene and, instead of telling Holmes to stop, shouted encouragement to Holmes to continue. This appears to be a classic case of aiding and abetting, which is what the trial court found.

I would affirm the judgment.